714 P.2d 6

Robert L. **BALSER** and Virginia **Balser,** husband and wife, Plaintiffs-Respondents,

v.

**KOOTENAI COUNTY BOARD OF COMMISSIONERS, Defendant-Appellant.**

No. 15691.

Supreme Court of Idaho.

Jan. 15, 1986.

Glen E. Walker, Kootenai County Pros. Atty., Susan V. Campbell, Chief Civil Deputy Pros. Atty., Coeur d'Alene, for defendant-appellant.

Charles B. Lempesis, Post Falls, for plaintiffs-respondents.

BAKES, Justice.

Appellant Kootenai County Board of Commissioners appeals a district court decision reversing the board's denial of a rezone request by respondents Balsers. The Board of County Commissioners raises two issues on appeal: (1) whether the district court erred in holding that the county's comprehensive plan takes precedence over an existing zoning ordinance, thereby requiring immediate amendment of all such ordinances to conform exactly to the comprehensive plan's land use designations; and (2) whether the district court erred in determining that Kootenai County Zoning Ordinance No. 11 predated the county's comprehensive plan and had not undergone

the review process as mandated by I.C. § 67–6514.

Respondents Balsers own a piece of property approximately 15 acres in size in Kootenai County. Balsers own and operate a small cedar shake mill on the property. The property is presently zoned agricultural by Kootenai County Zoning Ordinance No. 11 passed in 1973. The Comprehensive Land Use Map of the Kootenai County Comprehensive Plan (adopted on April 6, 1978) designates the area encompassing the Balser property as industrial.

On April 8, 1982, Balsers filed a petition with the Kootenai County Planning & Zoning Commission to change the existing zone classification of their land from agricultural to industrial. Hearings on the petition were held before the Kootenai County Planning & Zoning Commission on May 12, 1982, and the Kootenai County Board of Commissioners, on August 18, 1982. The Board of County Commissioners denied Balsers' application for a zone change on January 3, 1983. The commissioners held that Balsers had failed to meet their burden of proof in establishing "a substantial change in conditions or trend in the area, the availability of services, or the existence of special circumstances which would offset the adverse impacts of the requested spot zoning." The board further held, "that a comprehensive plan designation does not, *ipso facto*, mandate an immediate zone change, but rather establishes the direction of future zone changes once the requisite conditions ... have been established."[1]

Balsers appealed to the district court which in turn reversed the commissioners and ordered the property rezoned as requested.

"It is the conclusion of this Court, that the decision of the Board of County Commissioners of Kootenai County is reversed on the ground that the substantial rights of the Petitioners have been prejudiced and that the decision of the Board of Commissioners is made upon unlawful

1. The memorandum opinion of the board, one of the better analyses which we have had occa-

sion to review, is set out in the appendix to this opinion in its relevant portions.

procedure, and affected by errors of law, in that the Board did not follow the clear terms of its own adopted Comprehensive Plan.

"The Comprehensive Plan provides that the Petitioners property is zoned "industrial." Said plan takes precedence over the pre-existing conflicting County Ordinance No. 11.

"The action of the Board *should have been merely ministerial* in recognizing its comprehensive plan and considering Petitioners land zoned "industrial." (Emphasis added.)

In essence, the district court interpreted the "in accordance with" language of I.C. § 67–6511,[2] along with the language of I.C. § 67–6514,[3] as requiring existing zoning ordinances to be amended so as to immediately conform to the comprehensive plan.

## I

On appeal, the Board of County Commissioners contends that the district court erred as a matter of law when it held that the comprehensive plan takes precedence over an existing ordinance. The board argues that the comprehensive plan does not, in and of itself, require immediate conformance of all existing ordinances to the plan's land use designations. The board contends that the district court's holding to the contrary is in conflict with *Bone v. City of Lewiston*, 107 Idaho 844, 693 P.2d 1046 (1984). We agree.

In reaching its decision the district court was without the benefit of either statutory or judicial interpretation of the "in accordance with" language of I.C. § 67–6511. Subsequent to the district court's decision in this case, *Bone v. City of Lewiston,*

*supra,* was decided in which we specifically held that I.C. § 67–6511 does not require a zoning ordinance's land use designation to be in strict conformance with the corresponding land use designation of the comprehensive plan. We held that the determination of whether a zoning ordinance is "in accordance with" the comprehensive plan is one of fact. As a question of fact, the determination is for the governing body charged with zoning—in the present case the Board of County Commissioners.

"What a governing body charged to zone 'in accordance with' under § 67–6511 must do is make a factual inquiry into whether the requested zoning ordinance or amendment reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the present factual circumstances surrounding the request." 107 Idaho at 850, 693 P.2d at 1052.

Thus, the trial court erred as a matter of law in holding that the process of conforming zoning ordinances to the comprehensive plan is a purely ministerial duty. In fact, that determination is committed to the sound discretion of the governing body,[4] subject only to judicial review *on the record* pursuant to the guidelines of I.C. § 67–5215(b)–(g).

Having reviewed the record, we conclude that the decision of the Board of County Commissioners is supported by substantial evidence in the whole record and the board correctly applied the law as subsequently set out in the case of *Bone v. City of Lewiston, supra.* Accordingly, on the issue of whether the "[comprehensive] plan takes precedence over the pre-existing conflicting County Ordinance No. 11," we

---

**2.** This section contains procedures for adopting zoning ordinances and states, "The zoning districts shall be *in accordance with* the adopted [comprehensive] plan." (Emphasis added.)

**3.** This section requires "a governing board" to undertake a review of all zoning ordinances in existence as of the date of adoption of the comprehensive plan. "A governing board ... shall conduct a review of those ordinances and shall make necessary amendments in accordance with this chapter...."

**4.** That this determination constitutes a discretionary rather than a ministerial duty is supported by the permissive language of I.C. § 67–6511(b). "If the request is in accordance with the adopted plan, the zoning or planning and zoning commission *may* recommend and the governing board *may* adopt or reject the ordinance amendment...." (Emphasis added.)

reverse the decision of the district court and affirm the decision of the Board of County Commissioners.

## II

The Board of County Commissioners also argues that the district court erred in addressing the issue of whether or not Zoning Ordinance No. 11 has undergone the review and/or amendment provided by I.C. § 67–6514. Section 67–6514 provides that zoning ordinances in existence on the effective date of the Local Planning Act of 1975 shall be reviewed by the board of county commissioners to determine their compliance with the Local Planning Act of 1975, and the board "shall make necessary amendments in accordance with this chapter prior to January 1, 1978...." The board contends that the issue of compliance with I.C. § 67–6514 was not raised before the Board of County Commissioners, and thus the issue was not properly before the district court. In its opinion the district court stated, "No evidence was presented of any change or amendment of the zoning ordinance [No. 11] of Kootenai County to bring said ordinance into compliance with the comprehensive plan." The district court held, in essence, that Ordinance No. 11 had not undergone the review process mandated by I.C. § 67–6514, and was therefore invalid.

The district court erred in addressing the issue of compliance with I.C. § 67–6514. It is by now a well established rule in Idaho that review on appeal is limited to those issues raised before the lower tribunal and that an appellate court will not decide issues presented for the first time on appeal. *Baldner v. Bennett's, Inc.*, 103 Idaho 458,

460, 649 P.2d 1214, 1216 (1982); *Webster v. Potlatch Forest*, 68 Idaho 1, 16, 187 P.2d 527, 536 (1947). *See also Masters v. State*, 105 Idaho 197, 668 P.2d 73 (1983) (an appellant is held to the theories on which a cause was tried in the lower court and may not raise additional or new theories on appeal); *International Business Machines Corp. v. Lawhorn*, 106 Idaho 194, 677 P.2d 507 (Ct. App.1984) (even if issue was arguably raised in the lower tribunal under liberal interpretation of pleadings, if not supported by any factual showing or by submission of legal authority, it was not presented for lower court's decision and would not be considered on appeal). That this rule is equally applicable to appeals of zoning decisions is made clear by I.C. § 67–6521(d) which states that judicial review of the board's decision is governed by I.C. § 67–5215(b)–(g) which confines the review by the district court to the record. I.C. § 67–5215(f).[5]

In the present case, the Balsers did not raise the issue of Zoning Ordinance No. 11's compliance with I.C. § 67–6514 before the board of commissioners. The district court's observation that "no evidence was presented" regarding compliance with I.C. § 67–6514 is understandable considering the fact that the issue was not before the board. It was error for the district court, sitting as an appellate court, to nevertheless address and decide the issue.[6]

The judgment of the district court is reversed, and the decision of the Kootenai County Board of Commissioners is affirmed.

**5.** Obviously, if an issue has been raised before the zoning board it will be part of the record (absent some clerical error).

**6.** At oral argument, respondents Balsers stated that both parties orally stipulated before the district court that Ordinance No. 11 had not undergone the review process mandated by I.C. § 67–6514. Realizing that the stipulation was not contained in the record on appeal, respondents Balsers at oral argument requested this Court to augment the record. However, we deem it to be unnecessary to rule on the aug-

mentation issue because the Administrative Procedures Act, I.C. § 67–5215(g), precludes the district court from making *de novo* factual determinations. *Tappen v. State, Dept. of Health & Welfare*, 98 Idaho 576, 578, 570 P.2d 28, 30 (1977). The Administrative Procedures Act, I.C. § 67–5215(e) does give authority to the district court in appropriate circumstances to remand the matter to the administrative board for the taking of additional evidence and the making of additional findings and conclusions of law.

Costs to appellant; no attorney fees allowed.

DONALDSON, CJ., and SHEPARD, BISTLINE and HUNTLEY, JJ., concur.

## APPENDIX

In the Matter of ROBERT AND VIRGINIA BALSER, Request for Change of Zoning Classification

### CASE NO. Z–462–82
### MEMORANDUM OPINION

The above entitled matter came on regularly for hearing before the Board on the 18th day of August, 1982. Members of the Board present at the Hearing were Commissioner Michael B. McFarland, sitting as Chairman Pro Tem, and Commissioner B. Douglas Frymire; Commission Chairman Glenn R. Jackson was absent.

The Hearing was electronically recorded and a typewritten transcript was prepared.

Testimony and evidence were received from all interested parties at the Hearing. The record was held open until 5:00 o'clock p.m. August 19, 1982, for the submission of additional written evidence.

Both the proponents and a number of opponents were represented by legal counsel, and both submitted oral and written testimony and evidence.

A number of procedural and substantive objections were raised at the Hearing, and the parties were advised that those objections would be dealt with before a decision on the merits was rendered.

Having considered the testimony at the Hearing, and after review of the transcript and documents in the file, the Kootenai County Board of Commissioners make the following findings and conclusions.

. . . .

### III

### DISCUSSION OF ISSUES

Generally speaking, the facts are not in dispute. The key issues involve the interpretation of the applicable legal rules and, in several instances, the determination of applicable standards to be applied. It should be noted at the outset that the statutes and ordinances applicable hereto provide precious little in the way of specifics.

There is no question that the Kootenai County Comprehensive Plan designates the subject area as industrial, and that the current zoning of applicant's parcel is agricultural. The question involves the relationship of the Comprehensive Plan to the Zoning Ordinance. It is clear that the Comprehensive Plan is a general, long-range plan, which focuses on the character of the land use over a broad area. Zoning, on the other hand, focuses upon and regulates the particular use of specific pieces of property over the short term, with emphasis on the present. It is, further, reasonably well established in Idaho that zoning is ultimately to conform to the Comprehensive Plan. The question is when—immediately or ultimately.

If the Zoning Ordinance itself, or the zoning designation on a particular parcel of property must immediately conform to the Comprehensive Plan, then there appears to be an unnecessary duplication. A change in the Plan would then automatically change the zoning, and we would have a distinction without a difference.

In fact, there is a substantial difference between planning and zoning. Planning is long range; zoning is immediate. Planning is general; zoning is specific. Planning involves political processes; zoning is a legislative function and an exercise of the police power. Planning is generally dynamic while zoning is more or less static. Planning often involves frequent changes; zoning designations should not. Planning has a speculative impact upon property values, while zoning may actually constitute a valuable property right.

It seems clear, therefore, that while zoning designations should generally follow and be consistent with the long-range designations established in the Comprehensive Plan, there is no requirement that zoning immediately conform to the Plan. The

Plan is a statement of long-range public intent; zoning is an exercise of power which, in the long run, should be consistent with that intent. Planning is a determination of public policy, and zoning, to be a legitimate exercise of police power should be in furtherance of that policy.

The question before us, then, is what guidelines or indicators should be followed in granting or denying a zone change application which is consistent with the Comprehensive Plan?

Although there is no hard and fast rule or formula, there are several factors which must be considered:

1. *Whether there has been a substantial change in the character or conditions of the area in the immediate vicinity of the proposed rezoning.* Although the question of what constitutes a substantial change may be somewhat subjective, it is possible to determine whether a particular trend has been established in the area. Naturally, a change in the Comprehensive Plan designation may be a factor in determining the existence of a trend.

2. *Whether there exists contiguous (or near contiguous) development of a character similar to that proposed.* In the absence of a trend or contiguous similar development, a zone change of an isolated parcel amounts to "spot zoning." Of course, spot zoning is not universally undesirable (e.g., convenience, stores in remote areas, etc.), but there is a tendency for many types of spot zoning to adversely affect neighboring properties. Since one of the primary purposes of zoning is to minimize incompatible uses of neighboring properties, spot zoning is an anomaly. It allows the spot-zoned property owner his full measure of property rights at the potential expense of every one of his neighbors.

3. *Whether there is an adverse impact on neighboring properties.* This factor is particularly important in the case of spot zoning. If all the neighboring property owners consent, or if it is found that the proposed use will not have detrimental ef-

fect on neighboring properties, one of the strongest arguments against spot zoning is thereby mitigated. In that case, no one is getting a greater right at the expense of his neighbors. However, the converse is also true.

4. *Whether the necessary services required to support the proposed use are reasonably available.* While it is true that services tend to follow development, the lag time must be considered. If, for example, a sewage collection trunk line serving the area in question is on the drawing boards, then the lack of a present system would be largely mitigated. However, there must be a reasonable expectation of, or provision for, adequate basic services such as fire protection, water, waste disposal, etc. Certainly, if a showing can be made that necessary services either exist or are in the planning stage, this would assist in establishing the existence of a trend in the area which might mitigate spot zoning or development ahead of the availability of services.

5. *Special circumstances.* If the proposed zone change would have economic, environmental or other impact on the County as a whole or some significant portion thereof, these factors should also be considered.

The foregoing list of considerations is not exhaustive, but merely an outline of major concerns. The Comprehensive Plan and Zoning Ordinance must be administered in an orderly, consistent and objective manner in order to provide the maximum public benefit and minimal interference with private property rights.

## IV

## FINDINGS

The following facts are not in dispute: the area in question is designated industrial on the Comprehensive Plan, while Petitioners' property is zoned agricultural (as are all of the contiguous neighboring properties).

Petitioners presented no substantial evidence which would indicate a change in the

character or conditions in the immediate vicinity of the Petitioners' parcel, or a trend in the area toward industrial development, except for the fact of industrial designation on the Comprehensive Plan. The Petitioners correctly argued that the proposed change would be consistent with the Comprehensive Plan, as well as the Airport Master Plan, but presented no evidence of a timetable for the implementation of such a plan or the ultimate provision of necessary services. The opponents argued, on the other hand, that the Plan does not envision industrial development in the vicinity of the Petitioners' property for many years, nor will industrial quality services be reasonably available in the near future. We cannot disagree.

Both parties acknowledged that the property is not, at present, provided with industrial type services. The Petitioners indicated a willingness to work toward provision or enhancement of those services, although no details were offered. Accordingly, the Board cannot find that the subject property is presently provided with adequate fire protection, water service or waste disposal for an industrial level of use.

Except for the Comprehensive Plan designation, there has been no demonstration of a trend in the area which might mitigate the effects of spot zoning or development ahead of the availability of services.

Although there was ample testimony both in favor of and opposed to the proposed zone change, the bulk of the testimony on both sides was highly subjective and theoretical. However, the Board cannot ignore the fact that nearly all of the adjoining property owners were opposed to the reclassification. Additionally, although there was testimony to the effect that the zone change might slightly increase the value of the neighboring raw land, there was equally competent testimony that the value of the neighboring properties as residences or farmsteads would be reduced by the proximity of industrial use. It was also established that none of the adjoining properties are zoned industrial, nor is there any other industrial development in the immediate vicinity. Accordingly, the Board finds that the reclassification would constitute spot zoning, and would have an adverse impact on neighboring properties.

The Petitioners' arguments about the favorable economic impact of the proposed shake mill operation are well taken. The County has adopted a policy strongly supportive of economic development, and would clearly benefit from the reestablishment of the Balser shake mill operation. However, the benefit to the community would be just as great, if not greater, if that shake mill were appropriately located.

Although it might be inferred, the Petitioner did not present evidence tending to show a hardship inherent in locating the operation elsewhere within the County. Nevertheless, examination of the record makes it clear that there is a substantial stock pile of material and equipment presently on the property, which is a residual of the now expired Conditional Use Permit. The record at least suggests that requiring the Petitioner to remove his entire operation to another site without first processing the stock pile on hand would create financial hardship.

## V

## CONCLUSION

The Petitioner has failed to establish, by a preponderance of the evidence, the existence of a substantial change in conditions or trend in the area, the availability of services, or the existence of special circumstances which would offset the adverse impacts of the requested spot zoning.

The Board concludes that a Comprehensive Plan designation does not, *ipso facto*, mandate an immediate zone change, but rather establishes the direction of future zone changes once the requisite conditions alluded to hereinabove have been established. Accordingly, the application for change of zoning classification must be denied at this time.