862 P.2d 337

**Randall O. KNIGHT, Petitioner– Appellant,**

v.

**DEPARTMENT OF INSURANCE, State of Idaho, Respondent.**

**No. 20152.**

Court of Appeals of Idaho.

Oct. 8, 1993.

Russell J. Gallagher, Coeur d'Alene, argued, for petitioner-appellant.

Larry EchoHawk, Atty. Gen., Roger L. Gabel, Deputy Atty. Gen., argued, Boise, for respondent.

WALTERS, Chief Judge.

This case asks whether the Idaho Department of Insurance followed the correct procedure when suspending an agent's license and whether the suspension was substantively supported. On intermediate appeal, the district court upheld the order suspending the license. We affirm the district court order.

### Facts and Procedural History

In 1980, Randall O. Knight (Knight) was president and owner of Knight & Company, Inc., an independent insurance agency located in Coeur d'Alene, Idaho. That year, Knight entered into an agency contract with Royal Insurance Company (Royal). In October 1984, Royal decided to terminate the contract effective January 1, 1985. Knight interpreted this endeavor as a breach of contract and feared that Royal's decision would bring financial ruin to his business. On February 15, 1985, he filed an action against Royal in the United States District Court for the District of Idaho.

Beginning with payments due Royal on June 15, 1985, Knight commenced withholding premium payments collected from insureds which were to be forwarded to Royal. Knight claimed that the funds were an immediate offset for Royal's alleged breach of contract and were needed to operate his business. On June 18, 1985, Knight sent a letter to then director of the Department of Insurance (the Department) Wayne Soward, informing Soward that Knight would continue to withhold premiums until the dispute with Royal was resolved. The Department did not formally respond, but according to Knight, Richard Cook, the chief compliance officer, informed Knight that the dispute with Royal was a civil matter and the Department would not become involved.

Royal answered Knight's breach of contract claim in federal court and filed a counterclaim, asserting that Knight had violated I.C. § 41–1064 by withholding the premiums. Trial was held in July, 1987, and the jury rendered a verdict awarding Knight $974.54 for Royal's breach of contract. On its counterclaim, Royal was awarded $45,527.16 in compensatory damages and $6,827.57 in punitive damages. The judgment was affirmed by the Ninth Circuit Court of Appeals in 1988.

In October 1987, while the federal court matter was pending, the Idaho Department of Insurance filed administrative charges against Knight. An evidentiary hearing was held in February, 1988. The hearing officer found that Knight had misappropriated funds and converted them to his own use, a violation of I.C. § 41–1064. On June 20, 1988, Director Soward's successor, Anthony Fagiano, entered an order revoking Knight's license.

Knight appealed this order to state district court. The district court subsequently held that the hearing officer had improperly admitted certain evidence; vacated the order revoking Knight's license; and re-

manded the case for a new hearing. Knight appealed the remand order to this Court and we affirmed. *See Knight v. Department of Insurance*, 119 Idaho 591, 808 P.2d 1336 (Ct.App.1991).

On remand, the Department held a second hearing in June, 1991. A new hearing officer found that Knight had violated I.C. § 41-1064 by withholding premiums, and recommended a six-month license suspension. On September 20, 1991, the third director involved in the dispute, Harry Walrath, entered an order adopting the hearing officer's findings and conclusions. Director Walrath (the Director) ordered that Knight's license be suspended until he met certain conditions. Those conditions required Knight to apply for a new license, pay the applicable fees, complete forty credit hours of continuing education within a specified period of time, and pass any applicable licensing examination. The order provided that if Knight failed to comply with the conditions within one year from the date of his suspension, his license would be revoked.

Knight again appealed to the district court, which on July 15, 1992, affirmed the Director's order. Knight appeals, asserting that the suspension of his license was unconstitutional, illegal, inequitable, and not supported by the evidence.

### Standard of Review

 The issues presented in this appeal are the same as those considered by the district court in its appellate capacity. Therefore, this Court will review the record with due regard for, but independently of, the district court's review and decision. *South Fork Coalition v. Board of Commissioners of Bonneville County*, 117 Idaho 857, 859-60, 792 P.2d 882, 884-85 (1990); *Pan American Assurance Co. v. Department of Insurance*, 121 Idaho 884, 886, 828 P.2d 913, 915 (Ct.App.1992). The standard of judicial review of an administrative decision is governed by procedures described in the Administrative Procedures Act, I.C. § 67-5201 through § 67-5218. *South Fork Coalition*, 117 Idaho at 859-60, 792 P.2d at 884-85; *Pan American Assurance*

*Co.*, 121 Idaho at 886, 828 P.2d at 915; *See* I.C. § 41-242. Idaho Code § 67-5215(f) defines the reviewing court's scope of inquiry and provides that the review shall be confined to the record. *South Fork Coalition*, 117 Idaho at 859-60, 792 P.2d at 884-85; *Van Orden v. State Department of Health and Welfare*, 102 Idaho 663, 667, 637 P.2d 1159, 1163 (1981). Subsection (g) states that the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. *South Fork Coalition*, 117 Idaho at 859-60, 792 P.2d at 884-85. In other words, a reviewing court may not reverse the findings of the administrative agency where the findings are clear, dispositive and supported by evidence in the record. *Id.; Van Orden*, 102 Idaho at 667, 637 P.2d at 1163. The agency's findings are binding even where there exists conflicting evidence. *South Fork Coalition*, 117 Idaho at 859-60, 792 P.2d at 884-85. The reviewing court may affirm the agency decision, remand for further proceedings, or reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence in the whole record; or (6) arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.*

### 1. Warning Letter and Jurisdiction

First, Knight argues that he was deprived of due process of law because the Department did not send him a letter, as required by I.C. § 67-5214(c), warning him that he was facing formal charges for withholding premiums, that a hearing would be held, and that he could be subject to disciplinary action.

 Knight did not raise the issue of the warning letter at either administrative hearing, or in his first appeal to the district

court. He first raised the matter in his second appeal to the district court. Review on appeal is limited to the issues raised before the lower tribunal, and an appellate court will not decide issues presented for the first time on appeal. *Balser v. Kootenai County Board of Commissioners*, 110 Idaho 37, 40, 714 P.2d 6, 9 (1986). This rule applies to procedural errors and encourages litigants to raise the issue below, to give the lower tribunal an opportunity to correct errors before harm occurs or becomes incurable. *Needs v. Hebener*, 118 Idaho 438, 441, 797 P.2d 146, 149 (Ct.App. 1990). The rule applies equally to contested cases in administrative settings as well as proceedings before the courts. *See Manookian v. Blaine County*, 112 Idaho 697, 700, 735 P.2d 1008, 1011 (1987); *Balser*, 110 Idaho at 40, 714 P.2d at 9. It also applies to preclude consideration of constitutional issues raised for the first time on appeal. *See Tiffany v. City of Payette*, 121 Idaho 396, 401–403, 825 P.2d 493, 498–500 (1992); *West v. El Paso Products Co.*, 122 Idaho 133, 137, 832 P.2d 306, 310 (1992).

█ Knight attempts to avoid this rule of appellate procedure by arguing that the lack of a warning letter divested the Department of jurisdiction to suspend his license. He relies on I.C. § 67–5214(c), which requires that—for a license suspension to be lawful—the Department must provide the licensee with notice by mail and an opportunity to show compliance "with all lawful requirements for retention of the license." Genuine questions of subject matter jurisdiction present an exception to the rule that issues may not be raised for the first time on appeal. *Department of Labor and Industrial Services v. Hill*, 118 Idaho 278, 281, 796 P.2d 155, 158 (Ct.App. 1990); *In re Estate of Kunzler*, 109 Idaho 350, 353, 707 P.2d 461, 464 (Ct.App.1985). Administrative authorities are tribunals of limited jurisdiction, which is dependent upon the statutes reposing power in them. *Washington Water Power Co. v. Kootenai Environmental Alliance*, 99 Idaho 875, 879, 591 P.2d 122, 126 (1979); *Arrow Transportation Co. v. Idaho Public Utilities Commission*, 85 Idaho 307, 313–14,

379 P.2d 422, 425–26 (1963). If the statutes are not complied with, no jurisdiction exists. *Washington Water Power Co.*, 99 Idaho at 879, 591 P.2d at 126. We note, however, that although violation of a mandatory requirement may constitute error, not all errors are jurisdictional. An error is jurisdictional only if it deprives the tribunal of personal jurisdiction over the parties or of subject matter jurisdiction over the proceeding. *Matter of Von Krosigk*, 116 Idaho 520, 522, 777 P.2d 742, 744 (Ct.App. 1989).

█ Jurisdiction is composed of two parts: subject matter jurisdiction and personal jurisdiction. *Lockhart v. Department of Fish and Game*, 121 Idaho 894, 895–96, 828 P.2d 1299, 1300–01 (1992). Subject matter jurisdiction is the right and abstract power of the tribunal to exercise power over cases of the kind and character of the one pending. *Id.* Personal jurisdiction is the tribunal's power over the person before it. *Id.* Voluntary appearance before the tribunal, without raising any objection as to personal jurisdiction, is sufficient to confer personal jurisdiction. *Id.*

The Department had subject matter jurisdiction over Knight's activities as a licensed insurance agent. The Director is charged with enforcing the provisions of the Insurance Code, with which licensed agents must abide. *See* I.C. §§ 41–210, –213. The code requires that all premiums received by an agent shall be trust funds received in a fiduciary capacity by the licensed agent, who shall pay the funds to the insurer in the regular course of business. I.C. § 41–1064. The Director may impose administrative penalties for misappropriation of funds belonging to policyholders or insurers, or for violating any applicable provision of the code. I.C. § 41–1077(1)(d); I.C. § 41–1077(1)(c).

█ The Department had personal jurisdiction over Knight when he appeared at the proceedings before the Department and the district courts, disputing the Department's actions. The matter was commenced on October 23, 1987, when the Department filed its complaint with its di-

rector. Knight answered on November 2, 1987. He generally denied the Department's allegations and asserted that he had a setoff to Royal's claims and that I.C. § 41–1064 and § 41–1077 are too vague and ambiguous to be enforced. He did not allege that I.C. § 67–5214(c) had been violated; but raised that argument for the first time on appeal to the district court.

 Under the circumstances presented by this case, we conclude that the Department had both subject matter and personal jurisdiction in the proceeding. Furthermore, because the issue of the effect of the lack of a warning letter was not raised until appeal, after Knight had received notice of the Department's allegations, answered those allegations, presented evidence and received a ruling, we find no merit to Knight's due process assertion.

### 2. Estoppel

Knight argues that the Department is estopped from changing its interpretation of I.C. § 41–1064 and thereby subjecting him to disciplinary action. He bases his argument upon the letter he wrote to the Department on June 18, 1985, concerning Royal's action under its contract. In the letter, Knight stated that he would remit his company's "account current" to Royal, but he would "not be remitting payment for those items." He stated that he was going to take the funds he was withholding as an "immediate offset" for the losses caused by Royal's breach of contract.

The Department did not formally respond to Knight's letter. Knight testified, however, that Richard Cook, the Department's compliance officer, told him that the dispute was a civil matter between Knight and Royal, and the Department would not intervene. Knight argues that the Department, with Director Soward at the helm, did not interpret Knight's action as a violation of I.C. § 41–1064, but when the directorship changed hands, the new directors reinterpreted the action as a violation.

Mr. Cook died in a plane crash in 1987 and was not available to testify at the hearings. However, Dale Freeman, the Department's supervisor of compliance and investigation, testified that Cook had told Knight that Knight could not keep the premium money he owed to Royal. The hearing officer rejected all testimony regarding statements made by Mr. Cook as not reliable, and concluded that estoppel did not apply. There is substantial evidence in the record to support the hearing officer's conclusion.

 The doctrine of equitable estoppel requires that the party asserting the doctrine must rely on the conduct of the party against whom the doctrine is to be applied, and the party who relies on another's conduct must make a prejudicial change of position based that conduct. *Tiffany*, 121 Idaho at 403, 825 P.2d at 499. Here, there was no reliance or prejudicial change of position. The hearing officer found that the first premiums withheld by Knight were actually due three days before Knight wrote the letter to the Department. This finding was not challenged by Knight. Therefore, Knight began withholding money before the Department was notified of his intentions. He did not change his position based on any action, inaction, or statement of the Department. The language of Knight's letter supports the determination that he had already decided on a course of action and was not relying on a response by the Department.

### 3. Disciplinary Sanctions

Knight argues that suspending his license is unlawful and excessive because requiring him to reapply for a license and pass an examination amounts to a revocation and is inconsistent with the Director's authority.

 Knight's argument is not persuasive. The selection of administrative sanctions is vested in the agency's discretion. *Pence v. Idaho State Horse Racing Commission*, 109 Idaho 112, 116, 705 P.2d 1067, 1071 (Ct.App.1985). However, that discretion is limited by statute. The Director may not issue a license to a person whose license has been revoked until at least one year from the date of revocation. I.C.

§ 41–1078(4). Further, a revocation may serve to bar the issuance of a new license. *Id.*

The Director's order required that Knight's license be suspended until he applied for a new license, paid the applicable fees, completed forty credit hours of continuing education, and passed any applicable licensing examination. If he failed to comply with the conditions within one year from the date of his suspension, his license would be revoked. The suspension expressly provided for reinstatement of the license, and recognizes the harsher sanction of revocation if Knight did not pursue reinstatement. By the terms of the order, Knight could regain his license any time he met the conditions, even if that was accomplished in less than one year. This option would not be available if revocation had been ordered.

Suspending the license, as contrasted with revoking it, reflects the hearing officer's observation that Knight did not withhold the premiums by stealth or deception. Knight told the Department what he was doing and why, and he tried to protect the interests of the insureds whose premiums he withheld. This does not change the fact, however, that Knight violated I.C. § 41–1064 when he kept the premiums.

### 4. Sufficient Evidence

 Knight argues that the findings and conclusions of the hearing officer are not supported by competent and sufficient evidence. Specifically, Knight asserts that the evidence showed the premium payments he withheld were not fiduciary funds payable in the regular course of business to Royal, thus he did not violate I.C. § 41–1064. Knight attempts to distinguish between agency billed business, referred to as "account current premiums," and "direct bill" business. According to Knight, account current premiums, which he withheld, are not treated as fiduciary funds. Knight's interpretation is contrary to the plain language of I.C. § 41–1064(1). The statute does not distinguish between premium types. It merely states that "All premiums ... received by an agent ... shall be trust funds so received by the licensee in a fiduciary capacity," who must in the regular course of business account for and pay the funds to the insured, insurer, or agent who is entitled to the funds. There is sufficient evidence from which the hearing officer could conclude that Knight violated the statute.

### Conclusion

The Department had personal and subject matter jurisdiction to consider the issue whether Knight violated I.C. § 41–1064. Thereafter, it properly determined that an appropriate penalty would be to suspend Knight's license. The evidence clearly indicated that Knight violated I.C. § 41–1064 when he withheld premium payments due to Royal. The order suspending Knight's license is affirmed.

Costs to respondent, Department of Insurance. I.A.R. 40. Because attorney fees on appeal were not requested, no award is made in that regard.

LANSING and PERRY, JJ., concur.