976 P.2d 477

The **PAYETTE RIVER PROPERTY OWNERS ASSOCIATION, an unincorporated association, and Herbert Schneider, an individual, Petitioners–Respondents–Cross Appellants,**

v.

**BOARD OF COMMISSIONERS OF VALLEY COUNTY, a political subdivision of the State of Idaho; L.B. Industries, Inc., an Idaho corporation; and Payette River Subdivision Partnership, Respondents–Appellants–Cross Respondents.**

No. 23773.

Supreme Court of Idaho, Boise, December 1998 Term.

April 5, 1999.

Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, PA, Boise, for appellants. Stephen A. Bradbury argued.

Jim Jones & Associates, Boise, for respondents. John C. McCreedy argued.

TROUT, Chief Justice.

This is an appeal of a zoning decision by the Board of Commissioners of Valley County (Board), in favor of L.B. Industries, Inc., and the Payette River Subdivision Partnership (Partnership). The Board issued a conditional use permit to the Partnership for development of a subdivision. On appeal, the district court reversed the Board's decision and the Partnership now appeals to this Court. We affirm the district court.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

Early in 1991, the Partnership informally advised the Valley County Planning and Zoning Commission (P & Z Commission) and the county engineer of its intent to proceed with development of a proposed residential subdivision referred to as Payette River Subdivision, No. 3 in Valley County, Idaho. The proposed subdivision would involve 38 lots located on a 41–acre tract adjacent to the North Fork of the Payette River. Most of the land in the proposed subdivision is located in a flood-prone area which is subject to inundation every 100 years.

On January 16, 1992, the Partnership applied to the county engineer for a flood plain development permit. The permit was eventually approved and issued for site grading for roads and building sites in the subdivision on January 18, 1995.

On May 13, 1992, the Partnership filed an application for a conditional use permit and approval of the preliminary plat for the subdivision. At the time of filing, Valley County had in effect a Land Use and Development Ordinance enacted in 1982 (1982 Ordinance) and a Flood Damage Prevention Ordinance No. 3–90 (Ordinance 3–90), which was enacted in 1990. In 1992, after the application was filed but before the conditional use permit was issued, Valley County enacted a new Land Use and Development Ordinance (1992 Ordinance).

During a September 24, 1992 Valley County P & Z Commission hearing, the P & Z Commission tabled the Partnership's application and advised the Partnership that in order to continue, the P & Z Commission needed additional information. The additional information included a preliminary plat layout and various permits such as the flood plain development permit for which the Partnership had applied earlier that year.

After the Partnership had provided the additional information and permits to the P & Z Commission, a second hearing occurred on February 23, 1995, at which supporters and opponents of the subdivision presented evidence. On March 23, 1995, the P & Z Commission voted to deny the conditional use application and issued findings of fact and conclusions on April 13, 1995.

The Partnership subsequently appealed to the Board arguing that the decision of the P & Z Commission was based on erroneous information and an improper interpretation of applicable county ordinances. The Board addressed the issue during an April 24, 1995 meeting at which supporters and opponents again testified and the Board took the matter under advisement. The Board considered the matter again on May 8, 1995. During the May 8 meeting, no public testimony was presented, but the Board discussed the matter and heard comments from the county attorney and a member of the P & Z Commission. The Board voted to approve the application at the end of the May 8 meeting and subsequently issued findings of fact and conclusions of law on June 28, 1995. The Board concluded in the June 28, 1995 findings, that, among other things, the proposed development complied with the goals and objectives of the Valley County Comprehensive Plan, that the 1992 Ordinance did not apply to the application, and that the proposed filling of part of the project complied with the Flood–Prone Areas section of the 1982 Ordinance. The Board approved the application and ordered a conditional use permit for a preliminary plat of the subdivision subject to a number of conditions, including that the Partnership apply to the Federal Emergency Management Agency

(FEMA) for amendment of the Flood Insurance Rate Map (FIRM).

The Respondents, the Payette River Property Owners Association, Inc. (Association) and Herbert Schneider, the Association's president, (hereinafter collectively referred to as the Association) filed a petition for judicial review asserting that the Board's decision was arbitrary and capricious, not supported by substantial evidence on the record as a whole, and in violation of the Board's statutory authority. After lodging of the reporter's transcripts of the hearings, the Association objected to the sufficiency of the record, objecting mainly to the failure to record the Board's May 8, 1995 meeting. Although the Board heard objection and decided that the transcripts presented a fair and accurate account of the proceedings as a whole, the Board decided to re-announce its decision in a recorded public meeting so that a transcript could be made. That public meeting was held on May 31, 1996 and the Board's May 8, 1995 decision was re-adopted, as were the June 28, 1995 findings of fact and conclusions of law. On May 10, 1997, the district court entered its decision on the petition for judicial review. The district court determined that, despite the deference given to the Board's interpretation of its ordinances, the conditional use permit violated the clear and unambiguous prohibition on residential construction in a flood-prone area contained in the 1982 Ordinance. The district court then found it unnecessary to address the remaining issues given the court's decision regarding the interpretation of the ordinance. Last, the district court declined to award attorney fees to the Association pursuant to I.C. § 12–117. The Partnership now appeals from the district court's decision denying the permit and the Association cross-appeals from the denial of attorney fees.

## II.

## DISCUSSION

### A. Standard of Review

The Idaho Administrative Procedures Act (IDAPA) governs the review of local zoning decisions. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998). The standard of review for such a proceeding is well settled. In a subsequent appeal from the district court's decision where the district court was acting in its appellate capacity under the IDAPA, the Supreme Court reviews the agency record independently of the district court's decision. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998). The Court can not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. I.C. §. 67–5279(1) (1989). The Court defers to the agency's findings of fact unless they are clearly erroneous and the agency's factual determinations are binding on the reviewing court, even when there is conflicting evidence before the agency, so long as the determinations are supported by evidence in the record. *South Fork Coalition v. Board of Comm'rs of Bonneville County*, 117 Idaho 857, 860, 792 P.2d 882, 885 (1990). Additionally, there is a strong presumption of favoring the validity of the actions of zoning boards, which includes the application and interpretation of their own zoning ordinances. *Howard v. Canyon County Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 711 (1996).

A Board's zoning decision may only be overturned where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. §§ 67–5279(3)(a)—(e) (1989); *Price*, 131 Idaho at 429, 958 P.2d at 586. The party attacking a zoning board's action under I.C. § 67–5279(3) must first illustrate that the zoning board erred in a manner specified in I.C. § 67–5279(3) and must then show that a substantial right of the party has been prejudiced. *Castaneda*, 130 Idaho at 926, 950 P.2d at 1265 (citing *Angstman v. City of Boise*, 128 Idaho 575, 578, 917 P.2d 409, 412 (Ct.App.1996)).

### B. The Partnership's Motion to Dismiss Appeal, Vacate District Court Decision and Remand to District Court for Dismissal is denied.

Subsequent to the district court's decision, this Court issued its opinion in *Bothwell v.*

*City of Eagle,* 130 Idaho 174, 938 P.2d 1212 (1997) in which we held, based on our previous decision in *South Fork Coalition v. Board of Commissioners,* 112 Idaho 89, 730 P.2d 1009 (1986), that approval of a preliminary plat is not a final decision subject to judicial review. Following the release of *Bothwell,* the Partnership filed a Motion to Dismiss Appeal, Vacate District Court Decision and Remand to District Court for Dismissal. The Partnership argued that based on *Bothwell,* the Board's decision to approve the application and issue a conditional use permit for a preliminary plat was not a final decision subject to judicial review. We disagree and accordingly deny the Partnership's motion.

In *Bothwell,* Jayo Construction (Jayo) had submitted applications for approval of a preliminary subdivision plat and a flood plain development permit. The city counsel approved a preliminary plat application, but did not approve or deny the flood plain permit application. *Bothwell,* 130 Idaho at 175, 938 P.2d at 1213. In its approval of the preliminary plat application, the council included conditions that Jayo was required to fulfill before approval of a final subdivision plat and flood plain permit. *Id.* Although the Board in this case, like the city council in *Bothwell,* only approved a preliminary plat for the subdivision, we distinguish this case from *Bothwell* on the basis that in *Bothwell,* unlike the instant case, no permits had been issued that would have allowed an immediate and material alteration of the land.

Here, the county engineer granted the Partnership a flood plain permit allowing the Partnership to site grade for roads and building sites. In order to begin site grading, however, the Partnership was required to obtain a conditional use permit. When the Board issued the conditional use permit, the Partnership was then authorized to amend the subdivision site by placing fill on the land, in theory then taking the property out of the flood-prone area. Therefore, the conditional use permit for the preliminary plat of the subdivision, combined with the flood plain permit, allows the Partnership to drastically change the geography of the land. The preliminary plat is not a final decision as to the subdivision in that another step in the process, obtaining final approval from the Board, must first occur before the Partnership is able to build on the land. However, the issuance of the conditional use permit is final in that it allows the Partnership to permanently and irrevocably alter the land for the purpose of working toward final plat approval. Thus, as a result of the Board's decision, the Partnership will be allowed to fill the land, an action that we not only believe is not permitted by the 1982 Ordinance, but that significantly alters the land in such a way that would not permit, if final approval were ultimately not obtained, the land to be returned to the status quo.

■ We therefore distinguish *Bothwell* from this case and hold that where preliminary plat approval and the issuance of permits places a developer in a position to take immediate steps to permanently alter the land before final approval, the decision is final for purposes of challenging the authorized action that permits the material alteration and can be reviewed on appeal. Accordingly, we deny the Partnership's Motion to Dismiss and will address the merits of the appeal.

## C. The 1982 Ordinance applies to the Partnership's application.

The Association asserts that the Partnership's application for a conditional use permit should be evaluated under the 1992 Ordinance. Both the Board and the district court held that the 1982 Ordinance applied to the application.

■ Idaho law is well established that an applicant's rights are determined by the ordinance in existence at the time of filing an application for the permit. *South Fork Coalition,* 117 Idaho at 860–61, 792 P.2d at 885–86; *Cooper v. Board of County Comm'rs of Ada County,* 101 Idaho 407, 411–12, 614 P.2d 947, 951–52 (1980); *Ready–to–Pour, Inc. v. McCoy,* 95 Idaho 510, 513, 511 P.2d 792, 795 (1973); *Ben Lomond, Inc. v. City of Idaho Falls,* 92 Idaho 595, 601, 448 P.2d 209, 215 (1968). The reason behind the *South Fork Coalition* rule is that to permit retroactive application of an ordinance would allow a zoning authority to change or enact a zoning

law merely to defeat an application, which would result in giving immediate effect to a future or proposed zoning ordinance before that ordinance was properly enacted. *South Fork Coalition*, 117 Idaho at 861, 792 P.2d at 886 (citing *Cooper v. Board of County Comm'rs of Ada County*, 101 Idaho 407, 411–12, 614 P.2d 947, 952 (1980)). The Association argues that the *South Fork Coalition* rule should not apply to this case because, as they read the 1982 Ordinance, the Partnership could not obtain a conditional use permit and, thus, did not have a vested right to have the application determined under the 1982 Ordinance. Without a vested right, the Association asserts, there is no fear that retroactive legislation will take away an applicant's right to use her property as she desires.

Certainly, if the applicant does not comply with the Ordinance, a permit cannot be issued. However, the vested right in question is not the guaranteed right to obtain the permit, but rather the right to have the application evaluated and measured under the Ordinance in effect at the time of application. *See Ready–to–Pour*, 95 Idaho at 513, 511 P.2d at 795 (holding that the rule regarding the ordinance under which an applicant's rights are determined is the minority view "that the applicant's rights are *measured* under the law in effect at the time of the application." (emphasis added)). If the Association's logic were to go full circle, the result would be that the Partnership has no right to have the application evaluated under any Ordinance because, according to the Association, neither the 1982 Ordinance nor the 1992 Ordinance would allow the subdivision. Because an applicant must have the right to have applications evaluated, the Association's argument fails. Here, the Partnership submitted its application on May 13, 1992. The 1992 Ordinance did not become effective until June 25, 1992. Therefore, the application was submitted while the 1982 Ordinance was still in effect and as such the 1982 Ordinance applies to the Partnership's application.

## D. The Board incorrectly interpreted the 1982 Ordinance to allow for fill to take the property out of the flood-prone area for a use specifically prohibited in the Ordinance.

The Partnership argues that the Board correctly interpreted the 1982 Ordinance. The Board's interpretation of the 1982 Ordinance allows the Partnership to place fill on flood-prone land for a beneficial use, thereby taking the land out of the flood-prone area and removing any prohibitions in the Ordinance against residential uses in flood-prone areas.[1]

The provisions of the 1982 Ordinance at issue are as follows:

4.01.02 MAPS OF SPECIAL AREAS

. . . .

The Flood-prone Areas have been indicated on the 7.5 minute series topographic maps published and prepared by the Department of the Interior Geological Survey.

. . . .

4.02 FLOOD PRONE AREAS

. . . .

4.02.02 AREAS OF APPLICATION

The standards and procedures for flood-prone areas shall apply to those lands which are subject to inundation by flood waters at least once every 100 years. The flood-prone areas generally lie along major drainage channels. A large percentage of these areas are fully saturated seasonally or continuously.

4.02.03 PERMITTED USES

. . . .

[R]esidential and commercial uses, except for open space, *shall not be allowed in flood-prone areas.* (emphasis added).

4.02.04 STANDARDS

---

1. We note that the Board's findings do not specifically state that the proposed subdivision is beneficial. Rather, the Board found that "[t]he applicants [sic] proposal to amend the site by filling to above the base flood elevation is a beneficial use that improves the economic value of private property." Despite the confusion as to the Board's findings, it is clear from the entire findings of fact and conclusions of law that the Board addressed the overall project proposed by the Partnership and that by finding the fill to be a beneficial use, the Board necessarily determined that the underlying purpose for the fill, the subdivision, was also beneficial.

a. Excavation or fills

1. Excavation or fills shall be allowed only for beneficial use and shall be held to the minimum volume to achieve that purpose.

. . . .

b. Structures

1. Structures shall be limited by Section 4.02.03 and shall generally be restricted to bridges, culverts, or drainage, irrigation, or flood control devices.

There is no dispute that most of the land in question lies within a flood-prone area. The issue is whether the 1982 Ordinance allows for that land to be taken out of the flood-prone area by fill, thus solving the Ordinance's prohibition against residential uses in flood-prone areas.

 The objective in interpreting a statute or ordinance is to derive the intent of the legislative body that adopted the act. *Ada County Assessor v. Roman Catholic Diocese of Boise*, 123 Idaho 425, 428, 849 P.2d 98, 101 (1993). Such analysis begins with the literal language of the enactment. *Matter of Permit No. 36–7200*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992). However, where the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction. *Ada County Assessor*, 123 Idaho at 428, 849 P.2d at 101. An ordinance is ambiguous where reasonable minds might differ or be uncertain as to its meaning. *Ada County v. Gibson*, 126 Idaho 854, 856, 893 P.2d 801, 803 (Ct.App.1995). However, ambiguity is not established merely because the parties present differing interpretations to the court. *Matter of Permit No. 36–7200*, 121 Idaho at 823, 828 P.2d at 852. Where the language of an ordinance is ambiguous, the court looks to rules of construction for guidance and may consider the reasonableness of proposed interpretations. *Ada County v. Gibson*, 126 Idaho at 856, 893 P.2d at 803. Constructions that would lead to absurd or unreasonably harsh results are disfavored. *Gavica v. Hanson*, 101 Idaho 58, 60, 608 P.2d 861, 863 (1980).

 We interpret the 1982 Ordinance to prohibit residential uses in flood-prone areas and hold that the prohibition cannot be overcome by a finding that the residential use is "beneficial." The Board read the Ordinance provision allowing fill for beneficial uses to mean that, despite any prohibition in the Ordinance against a specific use, if the use were deemed "beneficial," then fill could be used to take the land out of the flood-prone area and remove the prohibition. We find the Board's interpretation to be erroneous and read the Ordinance to first require a use to be permitted. Once a use is determined permitted, the Ordinance requires a second inquiry if fill is necessary for construction: that the use be beneficial. Here, the clear language of the Ordinance prohibits residential structures in flood-prone areas. To interpret a beneficial use to be a use clearly prohibited by the Ordinance is a stretch of logic unsupported by any section the Ordinance. As the district court noted:

The word "shall" is defined in the 1982 ordinance as "mandatory." 1982 Ordinance, § 1.07. It follows that "shall not" means a mandatory prohibition.

The literal language of § 4.02.03(6) is unambiguous and does not need interpretation or construction. It prohibits residential uses in a flood-prone area. Consequently, unless some other statute or ordinance provides to the contrary, the application for a conditional use permit should have been denied.

The Partnership also argues that because Ordinance 3–90 does not have a specific prohibition against residential uses, then the 1982 Ordinance is repealed to the extent that Ordinance 3–90 allows for residential construction in flood-prone areas. We disagree with this argument. Ordinance 3–90 establishes a permit system for construction in flood-prone areas and provides for minimum standards for construction when construction is otherwise permitted. However, nothing in Ordinance 3–90 can be read to override the clear prohibition in the 1982 Ordinance against residential construction. As the district court stated, Ordinance 3–90 "does not implicitly permit what the 1982 Ordinance explicitly prohibits."

In sum, we interpret the 1982 Ordinance to prohibit residential uses in flood-prone areas and accordingly affirm the decision of the district court. Because of our interpretation of the 1982 Ordinance, we need not address the remaining issues on appeal regarding substantial evidence and due process issues.

**E. The district court did not err by denying the Association's request for attorney fees under I.C. § 12–117(1) because the Board did not act without a reasonable basis in fact or law.**

On appeal to the district court, the court denied attorney fees to the Association under I.C. § 12–117 stating that although "the County Commission misapplied the law, it acted with a reasonable though erroneous basis in fact and law." The Association asserts the district court improperly denied fees under I.C. § 12–117 because they were forced to bear an unfair and unjustified financial burden in an attempt to correct a mistake that never should have been made.

This Court recently examined the standard of review of district court decisions applying I.C. § 12–117 in *Rincover v. State,* 132 Idaho 547, 549, 976 P.2d 473, 475, (1999) and determined that the standard of free review was the preferable rule.

Idaho Code § 12–117(1) states that:

In any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the person reasonable attorney's fees, witness fees and reasonable expenses, if the court finds in favor of the person and also finds that the state agency, the city, the county or the taxing district acted without a reasonable basis in fact or law.

The purpose of I.C. § 12–117 is: (1) to serve as a deterrent to groundless or arbitrary action; and (2) to provide a remedy for persons who have borne unfair and un-justified financial burdens defending against groundless charges or attempting to correct mistakes agencies should never have made. *Rincover,* at 549, 976 P.2d at 475.

Here, because we affirm the district court's decision in favor of the Association, the first element of I.C. § 12–117, finding in favor of the Association, is present. However, we hold that the second element of I.C. § 12–117, that the Board acted without a reasonable basis in fact or law, is not fulfilled. The Board, although erroneously interpreting the 1982 Ordinance, examined the Ordinance and determined that the subdivision would be beneficial to the county. From the outset in 1992, when the P & Z Commission issued the letter requesting additional information and permits from the Partnership, the 1982 Ordinance was interpreted to allow for fill for subdivisions. The Board acted in a way that fairly and reasonably addressed the issue. Accordingly, we hold that the district court did not err by denying the Association's request for attorney fees under I.C. § 12–117.

### III.

### CONCLUSION

We affirm the district court's decision setting aside the Board's grant of a conditional use permit to the Partnership. We award costs to the Association on appeal.

Justices SILAK, SCHROEDER, WALTERS and Justice Pro Tem JOHNSON, concur.