# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34524

| | | |
|---|---|---|
| DEANE JOHNSON, | ) | |
| | ) | Idaho Falls, September 2008 |
| Petitioner-Appellant, | ) | Term |
| | ) | |
| v. | ) | 2009 Opinion No. 33 |
| | ) | |
| BLAINE COUNTY, IDAHO, a political | ) | Filed: March 5, 2009 |
| subdivision of the State of Idaho, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Respondent-Respondent. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CLEAR CREEK, LLC, an Idaho limited | ) | |
| liability company, | ) | |
| | ) | |
| Intervenor-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Blaine County. The Hon. Robert J. Elgee, District Judge.

The decision of the district court is affirmed.

Haemmerle & Haemmerle, PLLC, Hailey, for appellant. Fritz Haemmerle argued.

Blaine County Prosecuting Attorney, Hailey, for respondent Blaine County. Timothy K. Graves argued.

Lawson & Laski, PLLC, Ketchum, for respondent Clear Creek, LLC. Michael Pogue argued.

EISMANN, Chief Justice.

This is an appeal from a decision approving the application for the final plat of a planned unit development. We hold that most of the issues raised cannot be addressed in this appeal because they were decided in the earlier decision approving the conditional use permit, which

was a final decision from which no appeal was taken. We affirm the district court, albeit on different grounds.

## I. FACTS AND PROCEDURAL HISTORY

On December 8, 2004, Clear Creek, LLC, (Clear Creek) filed with Blaine County applications for a conditional use permit (CUP), for a community housing planned unit development (CH-PUD), and for a subdivision permit seeking to develop three contiguous parcels of land totaling 23.37 acres. The properties were within an area designated by Blaine County as a community housing overlay district (CHOD). The CHOD ordinance allows housing densities above those permitted by the underlying zoning district to encourage the development of moderate and lower income housing that meets the price and size standards set forth in the guidelines of the Blaine County Ketchum Housing Authority (Housing Authority). Deane Johnson (Johnson) owns land adjoining the northern of the three parcels.

After holding four public hearings on the applications, the Blaine County Planning and Zoning Commission (P&Z Commission) issued its written findings, conclusions, and recommendation to the Blaine County Board of County Commissioners (Board) on March 24, 2005. The Board then held three public hearings on the applications. On June 7, 2005, it issued its written findings of fact, conclusions of law, and decision approving the preliminary plat of the CH-PUD and the CUP application subject to certain conditions. Johnson did not appear at any of the public hearings or raise any specific objections to the approval of the preliminary plat or the CUP. On May 2, 2005, he sent an e-mail to the Board making two suggestions. First, he suggested that a note be entered on the subdivision plat warning future residents of the development that it adjoined a light industrial district, so that the future residents should not complain about the noise. Second, he suggested that a traffic signal be added at a specific location to alleviate traffic congestion.

On March 21, 2006, the Board held a public hearing to consider the final plat of the CH-PUD. Johnson did not appear at the hearing, but by letter delivered to Blaine County on March 17, 2006, his attorney raised various specific objections. The Board approved the final plat subject to conditions and issued its written findings of fact, conclusions of law, and decision on April 12, 2006. Johnson filed a petition for review. The district court affirmed the decision of the Board, and Johnson appealed to this Court.

2

## II.  ISSUES ON APPEAL

1.  Did the district court err in holding that the Blaine County Ketchum Housing Authority's involvement in the proposed development does not violate the County Housing Authorities and Cooperation Law?

2.  Did the district court err in holding that the County's delegation of authority to the Blaine County Ketchum Housing Authority did not violate Article III, § 1, of the Idaho Constitution?

3.  Did the district court err in holding that Blaine County did not violate the Local Land Use Planning Act by approving the proposed development subject to specified conditions?

4.  Did the district court err in holding that Blaine County did not violate the community housing overlay district ordinance when it approved the proposed development?

5.  Was Johnson substantially injured by the approval of the proposed development?

6.  Is any party entitled to an award of attorney fees on appeal?


## III.  ANALYSIS

In order to obtain judicial review of final action under the Local Land Use Planning Act (LLUPA), I.C. §§ 67-6501 *et seq.*, there must be a statute granting the right of judicial review. *Highlands Development Corp. v. City of Boise*, 145 Idaho 958, 960-61, 188 P.3d 900, 902-03 (2008).  Idaho Code § 67-6521 provides that a person who has "an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development" and who is "aggrieved by a decision" granting or denying the permit may seek judicial review, after exhausting all remedies under the county ordinance.  The approval of applications for a planned unit development, a conditional use, and a subdivision all constitute decisions granting permits.[1]  The granting of a permit authorizes the development, and is therefore appealable, if it "places a developer in a position to take immediate steps to permanently alter the land." *Payette*

---

[1] All three of these types of applications are expressly stated in LLUPA as being applications for permits.  Idaho Code § 67-6515 provides, "[E]ach governing board may provide . . . for the processing of applications for planned unit development permits"); Idaho Code § 67-6513 provides, "Each governing board shall provide . . . for the processing of applications for subdivision permits"; and Idaho Code § 67-6512(a) provides, "[E]ach governing board may provide . . . for the processing of applications for special or conditional use permits."

*River Property Owners Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 555, 976 P.2d 477, 481 (1999).

An affected person means "one having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development." I.C. § 67-6521(1)(a). Johnson owns land adjoining the proposed development. He may be adversely affected by the approval of a development that would have higher housing densities than would otherwise be permitted by the underlying zoning district. *See Cowen v. Board of Comm'rs of Fremont County*, 143 Idaho 501, 509, 148 P.3d 1247, 1255 (2006) and *Evans v. Teton County, Idaho, Board of Commissoners*, 139 Idaho 71, 75, 73 P.3d 84, 88 (2003). Therefore, Johnson is an affected person entitled to seek judicial review of the County Commissioners' approval of the planned unit development.

Review on appeal is limited to those issues raised before the administrative tribunal.[2] *Balser v. Kootenai County Bd. of Comm'rs*, 110 Idaho 37, 40, 714 P.2d 6, 9 (1986). "[A]n appellate court will not decide issues presented for the first time on appeal." *Id*. The court must affirm the decision of the administrative tribunal unless its findings, inferences, conclusions, or decision are: (a) in violation of the constitution or a statute; (b) in excess of its statutory authority; (c) made upon unlawful procedure; (d) not supported by substantial evidence in the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). In addition, the decision shall be affirmed unless the substantial rights of the appellant have been prejudiced. I.C. § 67-5279(4).

**A. Did the District Court Err in Holding that the Blaine County Ketchum Housing Authority's Involvement in the Proposed Development Does Not Violate the County Housing Authorities and Cooperation Law?**

Clear Creek contends that the Housing Authority's involvement in this project violates the County Housing Authorities and Cooperation Law (County Housing Law), I.C. §§ 31-4201 et seq., because less than fifty percent of the housing units in the entire project will be dedicated to affordable housing. The County Housing Law was enacted to provide a framework for

---

[2] This rule would not apply to an issue the administrative tribunal lacked the authority to decide, such as the facial constitutionality of a statute. *Wanke v. Ziebarth Constr. Co.*, 69 Idaho 64, 75, 202 P.2d 384, 391 (1949).

developing safe and sanitary dwelling accommodations for persons of low income. It permits a county to create an independent public body corporate and politic to be known as a housing authority. I.C. § 31-4205. A housing authority has a broad range of powers in order to effectuate the purposes of the County Housing Law. I.C. § 31-4204. At least fifty percent of the total number of dwelling units in a housing project subject to the County Housing Law must be made available to persons of low income. I.C. § 31-4204(j).

The Board created the Housing Authority pursuant to the County Housing Law. The Housing Authority's involvement in the proposed development would be to administer the community housing units in the development. Johnson contends that because of the Housing Authority's involvement, the proposed development is required to have at least fifty percent of its dwelling units made available to persons of low income. Since only thirty percent of the housing units in the proposed development would serve low-income persons, Johnson contends that the Housing Authority cannot be involved in this project.

The district court held that the proposed development was not a "housing project" subject to the County Housing Law because the Housing Authority was not the developer of the project. In so holding, the district court erred.

A "housing project" under the County Housing Law includes "any work or undertaking . . . [t]o provide decent, safe and sanitary urban or rural dwellings, apartments or other living accommodations for persons of low income." I.C. § 31-4203(b). A county housing authority's powers are not limited to developing a housing project. Its powers include, "to prepare, carry out, acquire, lease and operate housing projects"; "to establish and revise the rents or charges [for any housing project]"; and "[t]o exercise all or any part or combination of [such] powers." I.C. § 31-4204(b), (d), & (k). Thus, a housing authority's involvement can be limited to operating a housing project. If it does operate the project, then such project must comply with the County Housing Law.

The district court also stated that if the Housing Authority Law were not restricted to situations in which the housing authority was the developer of the project, then private developers who constructed any low-income housing would be subject to the Law. That is incorrect. It is the county housing authority's involvement in the project that requires compliance with the County Housing Law. If the housing authority is not involved, then a

5

developer need not comply with the Law even if the development includes one or more units intended for low-income persons.

In resolving this issue, the district court arrived at the correct result, but its decision was based upon the wrong theory. We will affirm the decision on the correct theory. *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984).

In the instant case, the Housing Authority is not intended to be involved in the entire proposed development. Its involvement will be limited to administering the community housing units, which comprise about thirty percent of the housing units in the development. There is nothing in the Community Housing Law providing that a housing project cannot be a portion of a larger development. Likewise, there is nothing in the Law providing that if a county housing authority is involved in a housing project that is a portion of a larger development, the County Housing Law must apply to the entire development. In this case, the Housing Authority will only be involved in managing the low-income housing units. Only that portion of the entire development is a housing project subject to the County Housing Law. The remaining portion of the development need not be considered when determining compliance with that Law.

**B. Did the District Court Err in Holding that the County's Delegation of Authority to the Blaine County Ketchum Housing Authority Did Not Violate Article III, § 1, of the Idaho Constitution?**

A county housing authority managing a housing project may only rent dwelling accommodations to persons of low income at rental prices within their financial reach. I.C. § 31-4213. According to Johnson, the Housing Authority will make the determination of "income, rent, price and size restrictions and in-lieu fees" in order for dwelling units to qualify as community housing units, which "amounts to an unlawful delegation of authority under Article III, Section 1, of the Idaho Constitution." The district court held that this provision of the Constitution was not violated because the Board had provided meaningful standards against arbitrary decision making by the Housing Authority. Although the district court arrived at the correct result, it based its analysis upon the wrong theory. We will affirm the decision on the correct theory. *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984).

The portion of Article III, Section 1, upon which Johnson relies states, "The legislative power of the state shall be vested in a senate and house of representatives." That constitutional

provision prohibits the Idaho legislature from delegating its powers to any other body or authority. *Boise Redevelopment Agency v. Yick Kong Corp*., 94 Idaho 876, 885, 499 P.2d 575, 584 (1972). The Board is not the Idaho legislature, and that constitutional provision therefore does not apply to it.

**C. Did the District Court Err in Holding that Blaine County Did Not Violate the Local Land Use Planning Act by Approving the Proposed Development Subject to Specified Conditions?**

When approving the planned unit development, the Board attached various conditions to its approval. Relying upon *Fischer v. City of Ketchum*, 141 Idaho 349, 109 P.3d 1091 (2005), Johnson argues that conditional approvals violate the Local Land Use Planning Act, (LLUPA) I.C. §§ 67-6501 et seq.

The district court correctly distinguished *Fischer* on the ground that in that case the city's conditional approval violated its own ordinance. In *Fischer*, a landowner submitted an application for a conditional use permit to construct a duplex on his property. Because the property was in an avalanche zone, the city ordinance provided that the conditional use permit could not be approved without a certification from a licensed engineer that the proposed construction would withstand avalanche forces and not deflect avalanches toward the property of others. The ordinance stated:

> *Prior to granting of a conditional use permit,* the applicant shall submit to the City plans signed by an engineer licensed in the state of Idaho, certifying that the proposed construction will withstand the avalanche forces set forth in the avalanche studies on file with the City and that the proposed construction will not deflect avalanches toward the property of others.

141 Idaho at 353, 109 P.3d at 1095 (quoting KZC § 17.92.010(D)(2); emphasis added). The applicant did not submit the required certification from an engineer with his application for the conditional use permit, and the city planning and zoning commission did not require it. Instead it approved the conditional use permit on the condition that the landowner obtain the required certification. This Court reversed because the ordinance required the engineer's certification before approval of the conditional use permit, and therefore approval with the condition that the certification be obtained violated the ordinance.

7

There is nothing in LLUPA that prohibits approval of a planned unit development with conditions. Idaho Code § 67-6515 provides, "Planned unit developments may be permitted pursuant to the procedures for processing applications for special use permits following the notice and hearing procedures provided in section 67-6512." Idaho Code § 67-6512(a) provides in part, "A special use permit may be granted to an applicant if the proposed use is conditionally permitted by the terms of the ordinance, subject to conditions pursuant to specific provisions of the ordinance . . . ." Subsection (d) of the statute contains a non-exclusive list of the types of conditions that may be attached to a special use permit. It states:

> Upon the granting of a special use permit, conditions may be attached to a special use permit including, but not limited to, those:
> (1) Minimizing adverse impact on other development;
> (2) Controlling the sequence and timing of development;
> (3) Controlling the duration of development;
> (4) Assuring that development is maintained properly;
> (5) Designating the exact location and nature of development;
> (6) Requiring the provision for on-site or off-site public facilities or services;
> (7) Requiring more restrictive standards than those generally required in an ordinance;
> (8) Requiring mitigation of effects of the proposed development upon service delivery by any political subdivision, including school districts, providing services within the planning jurisdiction.

Thus, Idaho Code §§ 67-6515 and 67-6512 provide that a planned unit development may be approved subject to conditions. In addition, Section 67-6515 also provides, "Denial of a planned unit development permit or *approval of a planned unit development permit with conditions unacceptable to the landowner* may be subject to the regulatory taking analysis provided for by section 67-8003, Idaho Code, consistent with the requirements established thereby." (Emphasis added.) The reference to the approval of a planned unit development with "conditions unacceptable to the landowner" would be unnecessary if the planned unit development could not be approved with any conditions at all. Indeed, after *Fischer* was decided, this Court in *Neighbors for a Healthy Gold Fork v. Valley County*, 145 Idaho 121, 176 P.3d 126 (2007), upheld the issuance of a PUD permit with conditions.

Johnson also argues that, as in *Fischer*, some of the requirements attached as conditions of approval were required to be satisfied prior to approval of the final plat of the planned unit

8

development. Specifically, he challenges the conditions regarding the sewer, the utilities, and the affordability of the housing units.

The Community Housing Overlay District (CHOD) ordinance is codified at Chapter 21B, Title 9, of the Blaine County Code. Section 9-21B-17 provides that to approve a conditional use permit application for a CH-PUD, the Board must find, based upon evidence in the record, that the application complies with specified standards, listed as Standards A through I.[3] Johnson argues that in three instances, there was no evidence in the record that the CUP application complied with the specified standards. Instead, the Board approved the CUP subject to conditions that Clear Creek would comply with those standards in the future.

**Sewer.** The requirements regarding sewer services for the proposed development are set forth in Standard D of Section 9-21B-17, which provides:

> D. Standard D: The CH-PUD will be served adequately by essential public facilities and services such as . . . water and sewer . . .; or the developer and as necessary thereafter the residents of the CH-PUD shall be able to provide adequately any such services. . . .
> Providers of essential public facilities and services have reviewed and approved or provided comment that the CH-PUD can be adequately served at build out.

When approving the CUP, the Board attached the following condition:

> 12. Provide written approval from EPA/DEQ, prior to commencement of construction of any dwelling unit that is not otherwise addressed in the Development Agreement, that the sewage treatment plant has been constructed and shall be operated and monitored all fully in compliance with NPDES permit requirements.

Johnson argues, "In this case, the Project was approved without any evidence that the sewer plant for the Project was 'approved' or could serve the Project 'at build-out.'" The district court ruled that the County was not required to make any findings with respect to the sewer

---

[3] The code section states:

9-21B-17: STANDARDS FOR EVALUATION OF CUP FOR CH-PUD:

The county shall review the particular facts and circumstances of each proposed CH-PUD conditional use permit application utilizing the following standards and shall find adequate evidence in the record that the proposed CH-PUD at the proposed location complies with each standard. Certain standards or parts thereof may not be applicable to particular applications upon specific finding by the county.

service prior to construction. Section 9-21B-17 requires that the findings be made on approval of the CUP for the CH-PUD, not merely prior to construction. However, the Board's final decision approving the CUP for the proposed development was issued on June 7, 2005. In its written findings, the Board stated, "Based on the record and findings stated herein above, the application is found to meet Standard D subject to conditions attached." Johnson did not appeal the approval of the CUP. Therefore, it is too late to raise any issue regarding the lack of evidence to support the finding regarding compliance with Standard D.

Clear Creek raised in the district court the issue of whether the petition for review was timely filed. On May 16, 2005, the Board voted to approve Clear Creek's CUP application, and on June 7, 2005, it issued its written findings of fact, conclusions of law, and decision doing so. Johnson did not appeal that decision. When addressing the issue of whether that decision was final, the district court first noted that the Board's decision issued on June 7, 2005, "allowed Clear Creek to construct three model homes on the property."[4] Blaine County also issued building permits for the construction of those houses. For reasons that will be discussed below, the district court rejected Clear Creek's assertion that the Board's decision approving the CUP was a final decision. Clear Creek did not raise that issue on appeal to this Court. However, subject matter jurisdiction is an issue that this Court may raise *sua sponte* at any time. *In re Quesnell Dairy*, 143 Idaho 691, 693, 152 P.3d 562, 564 (2007). The Court also permitted all parties to submit supplemental briefs addressing the issue of whether the decision issued on June 7, 2005, was a final decision.

In rejecting Clear Creek's argument that the decision was final because it permitted permanent alterations to the land, the district court stated: "The developer cites to *Stevenson v. Blaine County*, 134 Idaho 756 (2000) as support for his argument. However, *Stevenson* also provides that: '*whether an order granting preliminary plat approval is appealable depends on the nature of the governing ordinance*.' " (Emphasis added by district court.) The district court

---

[4] The approval of the CUP also allowed Clear Creek to: (a) install all utilities, including natural gas, electricity, telephone, and cable television, in underground conduits; (b) rebuild and resurface a portion of Broadway Run; (c) install culverts, dry wells, street signs, and stop signs; (d) build separation between Aquila Way and Wood River Trail; (e) install hydrants, water service lines, and central water system with back-up power; (f) install landscaping, including an irrigation system; (g) install improvements for recreation and common area; and (h) construct improvements to meet the conditions set forth in a letter from the Ketchum Rural Fire Department.

then held that it was not a final decision because the Blaine County ordinance provided that "only the final plat approval activates an appeal period." In so holding, the district court erred.

The district court's quotation from *Stevenson* demonstrates the error of basing a ruling upon a phrase taken out of context. The paragraph from which the quoted phrase was lifted is as follows:

> According to *Payette River* [*Property Association v. Board of Commissioners of Valley County*, 132 Idaho 551, 555, 976 P.2d 477, 481 (1999)], appealability turns on whether preliminary plat approval allows the developer to take immediate steps to permanently alter the land before final plat approval. The process for obtaining preliminary plat approval is not a uniform process; it varies from one county ordinance to another. Thus, whether an order granting preliminary plat approval is appealable depends upon the nature of the governing ordinance. The governing ordinance in this case allowed the developer to take immediate steps to permanently alter the land by constructing the necessary infrastructure prior to final plat approval. No further action by the Board was required before the developer can begin construction. The Board's order granting preliminary plat approval is a final decision subject to judicial review.

*Stevensen*, 134 Idaho at 760, 9 P.3d at 1226 (quoting from *Rural Kootenai Organization, Inc. v. Board of Commissioners*, 133 Idaho 833, 839, 993 P.2d 596, 602 (1999)). The *Stevensen* Court stated that it included the quotation from *Rural Kootenai Organization* in order to "reiterate" the principle "that where preliminary plat approval and the issuance of permits places a developer in a position to take immediate steps to permanently alter the land before final approval, the decision is final for purposes of challenging the authorized action that permits the material alteration and can be reviewed on appeal." 134 Idaho at 759-60, 9 P.3d at 1225-26.

When the quoted phrase is read in context, it is clear that when the *Rural Kootenai Organization* Court wrote that the appealability of an order "depends on the nature of the governing ordinance," it meant that appealability depends upon whether, under the governing ordinance, the granting of the order "allows the developer to take immediate steps to permanently alter the land." If it does, then the order is appealable. If it does not, then the order is not appealable.

We need not analyze the ordinance provisions mentioned by the district court, none of which mentioned the appealability of a decision granting a CUP, because a county ordinance cannot conflict with LLUPA. *In re Quesnell Dairy*, 143 Idaho 691, 694, 152 P.3d 562, 565 (2007); *Reardon v. Magic Valley Sand and Gravel, Inc.*, 140 Idaho 115, 119, 90 P.3d 340, 344

11

(2004); Idaho Const. Article XII, § 2. Idaho Code § 67-6521 authorizes an affected person to appeal "the issuance . . . of a permit authorizing the development." We have held that appealability depends upon whether the decision authorizes the developer to take steps to permanently alter the land without further approval of the governing board. *Canal/Norcrest/Columbus Action Committee v. City of Boise*, 136 Idaho 666, 670, 39 P.3d 606, 610 (2001); *Stevenson*, 134 Idaho 756, 759-60, 9 P.3d 1222, 1225-26 (2000); *Rural Kootenai Organization*, 133 Idaho 833, 838, 993 P.2d 596, 601 (1999); *Payette River Property Association*, 132 Idaho 551, 555, 976 P.2d 477, 481 (1999). If the ordinance authorizes the developer to alter the land upon the issuance of the permit, it does not matter if the ordinance states that the issuance of the permit is or is not appealable. It is appealable under LLUPA. To hold otherwise would allow a governing board to craft an ordinance that would permit a development to be completed before it could be challenged by a petition for judicial review.

The district court stated, "The Court notes that some Idaho caselaw supports the position that an approval permitting permanent alterations of the land is considered final for appellate purposes." The court dismissed that case law, apparently referring to *Canal/Norcrest/Columbus Action Committee*, *Stevenson*, *Rural Kootenai Organization*, and *Payette River Property Association*, as merely being "some" case law that was contrary to its decision. What the district court failed to appreciate is that there was no case law supporting its decision. The governing board certainly has authority to determine when a decision is final and appealable. It must do so, however, in conformity with LLUPA. If it does not want the issuance of a CUP to be appealable, then the issuance of that permit cannot authorize the developer to permanently alter the land.

In rejecting this Court's opinions in *Canal/Norcrest/Columbus Action Committee*, *Stevenson*, *Rural Kootenai Organization*, and *Payette River Property Association*, the district court stated,

> However, it is clearly the Blaine County Code's position that only the final plat approval triggers an appeal, and as the Idaho Supreme Court recently decided in *In Re Quesnell Dairy*, 143 Idaho 691, 152 P.3d 562 (2007) "when confusion arises as to when a governmental agency has made a final decision, thus starting the clock for the appeal period, the public will not be held accountable for the consequences of such inadequate notice." *Id* P.3d at 564.

This analysis by the district court is erroneous for three reasons.

12

First, the district court's apparent confusion was based upon ordinances relating to preliminary and final plat approval. The court did not cite any ordinance provisions relating to CUP approval. Section 9-21B-20 of the Blaine County Code provides, "A decision by the county on a conditional use permit application for a CH-PUD conditional use permit may be appealed through the process specified in chapter 32 of this title." The ordinance obviously contemplates that the CUP approval is a final decision. In its decision issued on June 7, 2005, the Board stated that it "made the *final decision* with respect to the conditional use permit application." (Emphasis added.) The district court has not pointed to anything in the Blaine County Code that would create confusion as to whether the approval of the CUP in this case was a final decision.

Second, in the *Quesnell Dairy* case there was confusion as to when the decision of the county commissioners took effect. In the instant case, there was no confusion as to when the Board's decision issued on June 7, 2005, took effect. The decision concluded as follows:

IT IS SO ORDERED.

DATED this 7th day of June, 2005.

BLAINE COUNTY BOARD OF COUNTY COMMISSIONERS

Third, there was no claimed confusion regarding the opinions of this Court in *Canal/Norcrest/Columbus Action Committee*, *Stevenson*, *Rural Kootenai Organization*, and *Payette River Property Association*. Whether the governing board's decision is the approval of a preliminary plat, as in *Stevenson* and *Rural Kootenai Organization*, or of a conditional use permit, as in *Canal/Norcrest/Columbus Action Committee* and *Payette River Property Association*, it is a final decision subject to judicial review if it allows the developer to take immediate steps to permanently alter the land without further action of the governing board.

"Requirements for timely filing and service of a petition for review are jurisdictional. Absent compliance with this statutory requirement, a district court has no jurisdiction to review a final determination of the district board." *Floyd v. Board of Comm'rs of Bonneville County*, 137 Idaho 718, 723, 52 P.3d 863, 868 (2002). Because the Board's decision issued June 7, 2005, granting Clear Creek's application for a CUP was appealable, and no appeal was taken from that decision, it is final. This Court has no jurisdiction to review determinations made in that

13

decision. Therefore, this Court cannot review on this appeal the Board's finding that the CUP met Standard D.

**Utilities.** Johnson contends, "The Developer did not submit a utility plan for the utility provider's review and approval, or for the County's review and approval." Johnson notes that in its written findings and recommendations issued on March 24, 2005, the P&Z Commission found it appropriate to require Clear Creek to submit a utility plan for all utilities it was going to install. The Commission did not say that the utility plan was required by any provision in the Blaine County Code, nor has Johnson pointed to any such code provision. In its approval of the CUP issued on June 7, 2005, the Board included as a condition: "All utilities, including natural gas, electricity, telephone, cable television, shall be installed to each lot at the property line and installed in underground conduits prior to surfacing the roadway. Plans shall be submitted to County prior to commencement of construction."

The public hearing for approval of the final plat of the CH-PUD was scheduled for March 21, 2006. On March 17, Johnson, through his counsel, submitted written objections to the final approval, but did not appear at the hearing. In those objections, Johnson did not raise any issue regarding the alleged lack of a utility plan. Therefore, he has not preserved that issue for appeal. *Balser v. Kootenai County Bd. of Comm'rs*, 110 Idaho 37, 40, 714 P.2d 6, 9 (1986).

**Affordability.** Johnson contends that the Board failed to make findings that the community housing units were affordable as required by Standard B of the CHOD ordinance, which provides:

> B. Standard B: The CH-PUD will be operated and maintained as designed.
> Designs and construction materials to be used in commonly owned areas and structures have been chosen for durability and cost efficient management and maintenance. Responsibility for long term management and maintenance of common open space, amenities, and infrastructure is adequately defined in the CC&Rs, other owners' documents, and/or agreements with BKHA, etc., and include initial developer responsibility, timing of changeover to homeowners' association or other managing organization and funding of said management and maintenance. Said document(s) shall include commitment to long term compliance with the plan and conditions of CH-PUD approval by county and long term compliance with housing guidelines, marketing, and sales by defining the roles of the BKHA, the developer, and the community housing and free market dwelling unit owner and renter and lot owner responsibilities.

14

In its decision approving the CUP issued on June 7, 2005, the Board found, "Based on the record and findings stated herein above, the application is found to meet Standard B subject to conditions attached." Because Johnson did not appeal that final decision, we cannot review that finding in this appeal. *Floyd v. Board of Comm'rs of Bonneville County*, 137 Idaho 718, 723, 52 P.3d 863, 868 (2002).

**D. Did the District Court Err in Holding that Blaine County Did Not Violate the Community Housing Overlay District Ordinance when It Approved the Proposed Development?**

Johnson contends that approval of the proposed project violated various provisions of the community housing overlay district (CHOD) ordinance. The district court specifically addressed two of the alleged code violations and then held that the Board had the authority to waive the remaining alleged code violations pursuant to Standard H of Section 9-21B-17. We will address each of the code violations alleged by Johnson.

**The Project will not be managed by a public sewer district nor will a public water and sewer district be created as required by the CHOD ordinance.** Johnson argues that the CHOD ordinance "provides that a CH-PUD application requires a 'specific plan for management of water and sewer systems by public water and sewer district or for creation of water and sewer district.'" He refers to Blaine County Code 9-21B-15(B)(5) which provides that a CUP application for a CH-PUD must include a "[s]pecific plan for management of water and sewer systems by public water and sewer district or for creation of water and sewer district."

Johnson cannot raise this challenge for two reasons. First, the final decision on the CUP application was made on June 7, 2005. Prior to that decision being made, Johnson did not raise before the Board any issue regarding the sufficiency of the CUP application. Therefore, he cannot raise that issue on appeal. *Balser v. Kootenai County Bd. of Comm'rs*, 110 Idaho 37, 40, 714 P.2d 6, 9 (1986). Second, Johnson did not timely appeal the decision granting the CUP application. He therefore cannot raise any issue challenging that decision in this appeal.

**The Project does not provide for minimum setbacks as required under the CHOD ordinance.** Section 9-21B-10 of the CHOD ordinance incorporates by reference the dimensional standards, including setbacks, required in Section 9-10-6 of the Blaine County Code. Johnson contends that the proposed development does not comply with those setback requirements.

15

Standard A of Section 9-21B-17 requires that the Board consider whether the CH-PUD is designed to be "harmonious," including that it have "adequate and appropriate setbacks." Standard H of Section 9-21B-17 provides, "That requested modifications to or exceptions from underlying zoning district requirements as pertain to setbacks, densities and lot sizes are warranted by the community housing units, design and amenities incorporated into the CH-PUD." In its recommendations issued on March 24, 2005, the P&Z Commission recommended a finding that the setbacks were adequate and appropriate and that modifications to setback requirements be made. In its decision issued on June 7, 2005, the Board agreed with the Commission's recommendations regarding setbacks.

Johnson contends that Standard H only permits waiver of the "underlying zoning district requirements" and that the setbacks required by Section 9-10-6 which are incorporated by reference into the CHOD are not the same as the underlying zoning district requirements. Johnson cannot now challenge the setbacks for two reasons. He did not raise that issue to the Board prior to its decision issued on June 7, 2005, and he failed to timely appeal that decision.

**The Project violates Title 6 of the Blaine County Code regarding street widths and intersections.** Johnson asserts that the proposed development violates zoning requirements with respect to street widths and, in two instances, insufficient distance between intersections. The P&Z Commission recommended modification of the street widths pursuant to Standard H of Section 9-21B-17, and it determined that the intersecting streets at issue functioned more as driveways than streets. In its decision issued on June 7, 2005, the Board agreed with the Commission's recommendations. Johnson contends that the Board erred when doing so because Standard H only permits modification of zoning requirements that pertain to setbacks, densities, and lot sizes. Johnson cannot raise that issue on this appeal. Because he did not timely appeal the decision, this Court does not have jurisdiction to review that decision, even if it contains an error in law.

**The Project violates the Blaine County fire code.** The Blaine County fire code provides that "[c]onstruction for any occupancy on a new or existing building, including remodels, within the county shall provide a minimum defensible space of thirty (30) feet surrounding any occupancy." BCC 7-7-5(D). The code defines "defensible space" as "[a] minimum thirty foot (30') area surrounding any occupancy consisting of approved vegetation that reduces a means of transmitting fire from vegetation to structures or from transmitting fire

16

from structures to vegetation." BCC 7-7-2. When approving the CUP, the Board stated as a condition that the proposed development "[c]omply with all KRFD [Ketchum Rural Fire Department] requirements set forth in the KRFD letter dated November 7, 2004, except the 30-foot clear zone." The Board found that the clear-zone requirement was more suited for a rural environment and not necessary for this proposed project. Johnson argues that the Board had no authority to exempt Clear Creek from the clear-zone requirement. Johnson cannot raise the issue on this appeal because he did not timely appeal the decision approving the CUP, and this Court therefore lacks jurisdiction to review that decision, even if it contains an error in law.

**The project does not contain the required number of community housing units under the CHOD ordinance to entitle Clear Creek to the density bonus.** The CHOD ordinance provides that a developer can obtain a five percent reduction in the number of community housing units required by providing "ownership units" that have a specified size and amenities. The ordinance does not define "ownership units," but it does divide community housing units into "rental units" and "ownership units." Johnson contends that the Board erred in granting Clear Creek the five-percent reduction because the units considered to be ownership units were not, due to the fact that the owner of the unit would not acquire title to the land upon which the unit was built. Johnson states that if these units had been properly found to be rental units, Clear Creek would have been required to provide six more community housing units than the thirty-nine approved by the Board.

The Board approved constructing the development with thirty-nine community housing units in its decision issued on June 7, 2005, approving the CUP. Johnson cannot challenge the determination of the number of community housing units required on this appeal because he did not raised that issue prior to the Board's decision issued on June 7, 2005, and he did not timely appeal that decision.

**When the true expenses that will be assessed are considered, the units designated by Clear Creek do not qualify as community housing units under the ordinance and Clear Creek is not entitled to the density bonus.** Johnson contends that the Board erred in concluding that the community housing ownership units would be affordable under the guidelines promulgated by the Housing Agency. Blaine County Code § 9-21B-12(A) states that one of the purposes of a conditional use for public housing is to "[i]ncrease the stock of housing for moderate and lower income households who work in Blaine County through the development

17

of deed restricted residential units that meet the price and size standards set forth in the Blaine Ketchum housing authority (BKHA) guidelines." The developer must satisfy an "Affordability Threshold" for rental and/or ownership community housing units. BCC § 9-21B-5. With respect to ownership units, the developer must "appropriately price a percentage of the units for sale as community housing units, as defined in the guidelines [adopted by the Housing Authority]," BCC § 9-21B-5, and the application must include "[e]vidence of compliance with section 9-21B-5, 'Affordability Threshhold,'" 9-21B-15(B)(11). When evaluating the application for the CUP, the Board had to find that the application complied with Standard B, which includes "long term compliance with housing guidelines, marketing, and sales." BCC § 9-21B-17(B).

On June 7, 2005, the Board approved the CUP, finding that Clear Creek met the requirements of the CHOD ordinance, including the "Affordability Threshold." Prior to that decision, Johnson did not raise any objection as to the affordability of the community housing units, and he did not timely appeal the decision. He cannot, in this appeal, challenge the finding that the community housing ownership units qualified under the CHOD ordinance.

**E.  Was Johnson Substantially Injured by the Approval of the Proposed Development?**

In its decision on judicial review, the district court wrote, "It is difficult, however, to see where a 'substantial right' of petitioners [sic] is affected under all the circumstances and challenges raised. For example, it is questionable whether petitioner's substantial rights are affected by the county's approval of unit pricing policies, or waiving setback requirements in this instance." Apparently as a result of that comment, Johnson included in his brief on appeal an argument that his substantial rights were affected. With our decision on appeal, we need not address that issue.

**F.  Is any Party Entitled to an Award of Attorney Fees on Appeal?**

Clear Creek seeks an award of attorney fees pursuant to Idaho Code § 12-121. That statute does not provide for the award of attorney fees in a petition for judicial review. *Lowery v. Board of County Comm'rs for Ada County*, 117 Idaho 1079, 1082, 793 P.2d 1251, 1254 (1990).

Johnson seeks an award of attorney fees pursuant to Idaho Code § 12-117. Since he has not prevailed on this appeal, he is not entitled to an award of attorney fees under that statute. *Fenwick v. Idaho Dept. of Lands*, 144 Idaho 318, 324, 160 P.3d 757, 763 (2007).

18

Blaine County also seeks an award of attorney fees under Idaho Code § 12-117. Attorney fees would be awardable against Johnson under that statute if we find that he "acted without a reasonable basis in fact or law." *Id.* Because we have affirmed the district court upon grounds different than its decision was based, we cannot say that Johnson acted without a reasonable basis in fact or law in bringing this appeal. *See Youngblood v. Higbee*, 145 Idaho 665, 669, 182 P.3d 1199, 1203 (2008). Therefore, we do not award Blaine County attorney fees on appeal.

## IV. CONCLUSION

We affirm the decision of the district court dismissing the petition for judicial review. We award the respondents costs, but not attorney fees, on appeal.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.