# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37320-2010

| | | |
|---|---|---|
| DOUGLAS and MICHELLE STAFFORD, husband and wife, | ) ) ) | Coeur d'Alene, April 2011 Term |
| Petitioners-Appellants, | ) ) | 2011 Opinion No. 48 |
| v. | ) ) | Filed: April 20, 2011 |
| KOOTENAI COUNTY, a Political Subdivision of the State of Idaho, acting through the KOOTENAI BOARD OF COMMISSIONERS; and ELMER R. "RICK" CURRIE, RICH PIAZZA, and TODD TONDEE, COMMISSIONERS, in their official capacities, | ) ) ) ) ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Respondents. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. The Hon. John T. Mitchell, District Judge.

The judgment of the district court is vacated.

John F. Magnuson, Coeur d'Alene, argued for appellants.

Patrick M. Braden, Deputy Prosecuting Attorney, Coeur d'Alene, argued for respondents.

---

EISMANN, Chief Justice.

This is an appeal from a decision of the district court on a petition for judicial review upholding the county's determination that the appellants had violated a zoning ordinance. Because there is no statute granting judicial review of administrative proceedings enforcing a zoning ordinance, we vacate the decision of the district court and remand this case with instructions to dismiss the petition for judicial review without prejudice.

## I. FACTS AND PROCEDURAL HISTORY

In 1999, Douglas and Michelle Stafford purchased a three-quarter-acre lot with frontage on Lake Coeur d'Alene in Kootenai County (County). On July 27, 1999, they obtained a building permit from the County to construct a single family residence on their property. The residence was completed in 2000, and on March 23, 2000, the County issued them a certificate of occupancy for the residence.

On August 19, 2005, the Staffords obtained a building permit to construct an addition to their residence. While a County framing inspector was inspecting the construction on August 28, 2007, he advised a subcontractor that the Staffords would not receive a certificate of occupancy because the Staffords' landscaping violated the County site disturbance ordinance. Later that day and the next, the County inspected the Staffords' property and took photographs of the area of the alleged violation.

On August 29, 2007, the County issued a notice of violation of the site disturbance ordinance, giving the Staffords until September 7, 2007, to take corrective action. Mrs. Stafford, the Staffords' contractor, and a County representative later met on the property, and the representative stated that the Staffords would have to prepare a remediation plan to return a portion of the property back to its natural state.

On November 21, 2007, the Staffords' counsel sent the County a letter contesting the alleged violation and stating that they may have to seek a writ of mandamus to obtain the certificate of occupancy for the addition. The County responded by letter dated January 15, 2008. It stated that no decision had been made regarding the certificate of occupancy, and it gave the Staffords until February 1, 2008, to submit a remediation plan or additional information supporting the Staffords' contention that they were not in violation of the site disturbance ordinance. The letter also reflected the County's misinterpretation of the wording of its site disturbance ordinance that persisted throughout the agency proceedings.

The County adopted Site Disturbance Ordinance No. 251 with an effective date of January 1, 1997. On July 21, 1999, it adopted Site Disturbance Ordinance No. 283. That ordinance provided, "The provisions of this Ordinance shall supersede the provisions of Kootenai County Site Disturbance Ordinance No. 251." On December 8, 2005, the County adopted Site Disturbance Ordinance No. 374, and it provided, "The provisions of this Ordinance shall supersede the provisions of Kootenai County Site Disturbance Ordinance No. 283."

Because the relevant provisions of all three ordinances are identical, we will refer to them collectively as the site disturbance ordinance. The site disturbance ordinance provides:

> For lots with frontage on a recognized lake or the Coeur d'Alene or Spokane Rivers, an undisturbed natural vegetation buffer shall be retained at the waterfront. A stairway or walkway (which does not exceed 4 feet in width), stairway landings (which do not exceed 6 feet in width or length), or a tram shall be allowed to encroach within the buffer. The buffer shall be a minimum of 25 feet in slope distance from the high water mark of the water body. . . .

The ordinance required that an "undisturbed natural vegetation buffer" of twenty-five feet in width be "retained at the waterfront." The words "undisturbed natural vegetation buffer" were defined as: "An area where no development activity has occurred or will occur, including, but not limited to, logging, construction of utility trenches, roads, structures, or surface and stormwater facilities. Buffer areas shall be left in their natural state."

An ordinance is construed according to its literal language. *Lane Ranch Partnership v. City of Sun Valley*, 145 Idaho 87, 90, 175 P.3d 776, 779 (2007). The relevant portion of the ordinance is unambiguous. By its terms, it only applies to property within the twenty-five-foot buffer "where no development activity has occurred or will occur." It does not apply to property within that twenty-five-foot buffer where development activity has already occurred.

That is significant in this case because Mr. Stafford presented uncontradicted testimony in the agency proceedings that at least some of the property was not in its natural state when they purchased the building lot. He stated that the waterfront area of the property was a "mess" when they purchased it. The property had been logged by the developer and then subdivided. There was a slash pile consisting of stumps, logs, and brush that he estimated was four to six feet high and about twenty-five feet in diameter. He described the property as being "torn up." People had camped on the property and hunted ducks from it, and it was strewn with trash. We cannot determine from the record how much, if any, of the property within the twenty-five-foot buffer could be classified as undisturbed natural vegetation because during his testimony Mr. Stafford was pointing to photographs to explain where the development activity had occurred, and the record does not indicate where he was pointing. Development activity appears to have occurred within twenty-five feet of the ordinary high water mark because he described the slash pile as being on "the area down by lake." It is also not clear whether the entire property had been

logged or only portions of it. By definition, any areas that had been logged were no longer an undisturbed natural vegetation buffer.

However, throughout the proceedings, the County disregarded the fact that some or all of the Staffords' property may not be classified as an undisturbed natural vegetation buffer due to the fact that development activity had previously occurred there. The failure to address that evidence was apparently because the County contended that its site disturbance ordinance created a twenty-five-foot zone above the ordinary high water mark in which there could be no development activity without prior County permission.[1] In its letter to the Staffords' counsel dated January 15, 2008, the County referred to the twenty-five-foot buffer as a "required 25' setback" and a "25' no disturbance zone," and it stated that Ordinance No. 283 "required a 25' no disturbance buffer from the ordinary high water mark." In the decision for which the Staffords sought judicial review, the Board of County Commissioners characterized the site disturbance ordinance as "requir[ing] a 25' no disturbance buffer from the ordinary high water mark."

During his argument to the Board at the conclusion of the hearing, the Staffords' counsel stated: "The interesting dichotomy with this property is it wasn't an undisturbed natural vegetation buffer when the Staf—Stafford's bought it because it had already been logged. Add a slash pile which takes it out of the definition of an undisturbed natural vegetation buffer." In its decision, the Board did not address Mr. Stafford's testimony or his counsel's argument quoted above. Its only mention of Mr. Stafford's testimony was its summary of the testimony he had previously given before the hearing examiner in that portion of the Board's decision entitled "Background and Course of Proceedings."

In its written decision issued after the hearing, the Board found, "The testimony and evidence admitted at the appeal hearing clearly shows that there is site disturbance in the 25 foot no-disturbance zone." It failed to realize that the ordinance did not create a "25 foot no-disturbance zone." The ordinance created a twenty-five-foot buffer above the ordinary high water mark in which one could not disturb undisturbed natural vegetation. The Board was obviously misinterpreting the site disturbance ordinance as prohibiting any disturbance of the

---

[1] The ordinance lists certain activities that are exempt from the permit requirements, but they are not relevant to this case.

soil within twenty-five feet of the ordinary high water mark, even if the area at issue was not undisturbed natural vegetation.

Although there is a strong presumption that a zoning board's interpretation of its own zoning ordinance is valid, *Lane Ranch Partnership v. City of Sun Valley*, 145 Idaho 87, 89, 175 P.3d 776, 778 (2007), that presumption is overcome when the board's interpretation is not a reasonable construction of the wording of the ordinance, *id*. at 90-91, 175 P.3d at 779-80. As stated above, the County's interpretation was not a reasonable construction of the wording of the site disturbance ordinance.

During oral argument, the County sought to support its interpretation of the ordinance based upon the definition of "undisturbed natural vegetation buffer." It is defined as: "An area where no development activity has occurred or will occur, including, but not limited to, logging, construction of utility trenches, roads, structures, or surface and stormwater facilities. Buffer areas shall be left in their natural state." The County contended that the words "will occur" in the definition mean that no future development activity can occur even in areas where development activity has occurred. Although that interpretation is certainly imaginative, it is not a reasonable construction of the wording.

The relevant portion of the ordinance prohibiting conduct is Section 8(B) which states, "For lots with frontage on a recognized lake or the Coeur d'Alene . . . , an undisturbed natural vegetation buffer shall be retained at the waterfront." It only requires *retaining* an undisturbed natural vegetation buffer. In those areas where development activity had already occurred, there would be no undisturbed natural vegetation buffer to retain. One cannot retain what one did not have. Considering the definition of such a buffer as "[a]n area where no development activity has occurred or will occur" and the statement that "[b]uffer areas shall be left in their natural state," the ordinance simply does not apply to areas within the twenty-five-foot zone that were not in their natural state due to development activity that had occurred before the Staffords purchased their property.

On August 29, 2007, the county issued a notice that the Staffords' property violated Site Disturbance Ordinance No. 374. The parties attempted unsuccessfully to resolve the matter. The County then decided to withhold the certificate of occupancy for the addition to the Stafford's home until they remediated their property as desired by the County, in essence taking the addition hostage to coerce the Staffords into submitting to the County's demands. By a letter

dated February 21, 2008, sent to the Staffords' attorney, the County informed him, "Until a complete Site Disturbance remediation plan has been received and approved, a Certificate of Occupancy will not be issued."

On March 19, 2008, the County issued a "Notice of Site Disturbance Ordinance Violation," which gave the Staffords forty-five days in which to resolve the violation. The Notice also stated that they had thirty days within which to appeal the Notice. The Staffords appealed to a County hearing examiner and then to the Board of County Commissioners.

A County enforcement officer explained to the hearing examiner and to the Board the basis of the County's claim that it had the right to refuse issuance of the certificate of occupancy in order to force compliance with the County's demand that the Staffords perform site remediation on their property. Its asserted justification for doing so was section 105.4 of the International Residential Code, which the County had adopted. That section provides, "The building official is also authorized to prevent occupancy or use of a structure where in violation of this code or of any other ordinances of this jurisdiction." The words "where in violation" refer to the structure. The structure must be in violation of the code or some other ordinance. Unless the addition was in violation of the building code or some other ordinance, this provision would not give the county authority to withhold the certificate of occupancy. During oral argument, the County admitted that the addition was not in violation of the code or any other ordinance. The County apparently chose to ignore the applicable section of its building code which stated, "After the building official inspects the building or structure and finds no violations of the provisions of this code or other laws that are enforced by the department of building safety, the building official *shall issue* a certificate of occupancy . . . ." (Emphasis added.)

During oral argument on this appeal, the County did proffer another justification for withholding the certificate of occupancy. It pointed to a sentence in the site disturbance ordinance which states that if any listed violations of the ordinance have occurred, "[t]he Administrator may also withhold further issuance of permits." The County argued that a certificate of occupancy could be considered to be a permit since it permitted the owner to occupy the structure.

In making that argument, the County did not address the above-quoted portion of the building code, which is a specific provision controlling the issue of a certificate of occupancy. It also did not address the section of the building code defining when one must apply for a required

permit. That section lists various types of activity that require a permit, but it does not mention applying for a permit in order to occupy a structure once it has been completed. The County also did not mention that the permit application forms on the County website do not include an application for a certificate of occupancy. In context, the reference in the site disturbance ordinance to withholding further issuance of permits refers to withholding further issuance of permits under that ordinance, not under the building code. Although it has been imaginative in seeking to justify its conduct, the County had no authority to withhold the certificate of occupancy for the Staffords' addition.

The primary issue raised by the Staffords before the Board of Commissioners and the district court was that they were cited under the wrong ordinance. When the Staffords purchased their property, Site Disturbance Ordnance No. 251 was in effect. When they landscaped their property, Site Disturbance Ordinance No. 283 was in effect. In these proceedings, the County cited them with violating Site Disturbance Ordinance No. 374. The Staffords contended in the agency proceedings, in the district court, and on appeal to this Court that the County cited them under the wrong ordinance. Neither party nor the district court addressed the applicable law.

In *Ellenwood v. Cramer*, 75 Idaho 338, 272 P.2d 702 (1954), we recognized the following rule:

> [W]here a statute is repealed and all of its provisions are at the same time re-enacted, such re-enactment is an affirmance of the old law so that the provisions of the repealed act which are thus re-enacted, continue in force without interruption and all rights and liabilities incurred thereunder are preserved and may be enforced.

*Id*. at 345, 272 P.2d at 706.

We next addressed the issue in *State v. Webb*, 76 Idaho 162, 279 P.2d 634 (1955). In *Webb*, the defendant was charged with driving under the influence of alcohol on February 23, 1954, under Idaho Code § 49-520.2 which was a newly enacted statute that took effect on January 1, 1954. That statute provided that "[e]very person who is convicted of a violation of *this section*" shall be imprisoned in the state penitentiary if it is a second or subsequent violation. *Id*. at 166, 279 P.2d at 636 (emphasis added). The defendant was charged with having a prior conviction on March 30, 1953, which occurred prior to the effective date of the newly enacted statute. The defendant contended that he was wrongly convicted of having a second conviction of violating Idaho Code § 49-520.2 because his prior conviction had not been a violation of "this

7

section"—the current statute. It was a violation of former Idaho Code § 49-502, which had been repealed. We summarized his argument as follows, "Appellant bases this contention upon the requirement of Section 49-520.2, I.C., that there be a former conviction under 'this section,' which does not refer to a conviction under the statutes originally enacted in 1927." *Id.*

This Court noted that there was a difference in wording between the two statutes. The former statute declared it a crime for "any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon any highway within this state." The new statute declared it a crime for "for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state." We held that the difference in wording was not material to the case.

> In the case now before the Court, it is to be noted all of the statutory provisions repealed and those simultaneously re-enacted are not the same, but as far as this case is concerned, the statute under consideration makes it unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle upon any highway within this State and the penalty for a second offense has remained the same. Section 49-520.2, I.C., omits the words 'upon any highway', which broadens it and there is also added additional offenses, but Section 49-520.2, I.C., continues the offense of which appellant originally was convicted.
> . . . .
> As far as the substance of the crime in this particular case and the appropriate penalties are concerned, the new statute is a reaffirmance of the old, even though there are modifications in the new statute.

*Id*. at 166-67, 279 P.2d at 636-37.

This Court held, "The new statute being a continuation of the former, the offense committed by appellant on February 23, 1954 was a second offense within the meaning of Section 49-520.2, I.C." *Id*. at 167, 279 P.2d at 637. In doing so, we stated, "'A subsequent act of the Legislature repealing and re-enacting, at the same time, a pre-existing statute, is but a continuation of the latter, and the law dates from the passage of the first statute and not the latter.'" *Id.* at 166-67, 279 P.2d at 636 (quoting *State v. Ward*, 40 S.W.2d 1074, 1078 (Mo. 1931)).

The relevant provisions of Site Disturbance Ordinances Nos. 251, 283, and 374 are identical. With respect to this case, No. 374 is merely a continuation of No. 283, and the county did not err in alleging a violation of No. 374.

The Board of Commissioners found that the Staffords had violated the site disturbance ordinance, and it gave them sixty days within which to submit a remediation plan. The issuance of the certificate of occupancy was not an issue presented to the Board and was not mentioned in its decision. The Staffords filed a petition for judicial review with the district court, and it affirmed the decision of the Board. The Staffords then appealed to this Court.

## II. ANALYSIS

The dispositive issue in this case is whether this Court has jurisdiction. "[S]ubject matter jurisdiction is an issue that this Court may raise *sua sponte* at any time." *Johnson v. Blaine County*, 146 Idaho 916, 924, 204 P.3d 1127, 1135 (2009). The agency order at issue in this case affirmed that the Staffords had violated the site disturbance ordinance and ordered that they submit a remediation plan within sixty days. All three site disturbance ordinances expressly stated that they were enacted pursuant to Idaho Code § 67-6518, which is one section of the Local Land Use Planning Act (LLUPA), Idaho Code §§ 67-6501 to 67-6538. To obtain judicial review of final action under LLUPA, there must be a statute granting the right of judicial review. *Rollins v. Blaine County*, 147 Idaho 729, 731, 215 P.3d 449, 451 (2009). In 2010, the legislature limited the persons entitled to judicial review under LLUPA.[2] Because the petition for judicial review in this case was filed on March 27, 2009, before the amendments took effect, it is governed by the prior statutes.

Former Idaho Code § 67-6519(4) granted the right of judicial review regarding applications for a permit required or authorized under LLUPA. Ch. 123, § 1, 2003 Idaho Sess. Laws 373, 374. An applicant who had applied for a permit required or authorized under LLUPA could file a petition for judicial review if the applicant was either denied the permit or aggrieved

---

[2] After the 2010 amendment, petitions for judicial review are limited to the matters identified in Idaho Code § 67-6521(1)(a). I.C. §§ 67-6519(4)(c) and 67-6521(1)(d). Those matters are:

(i) The approval, denial, or failure to act upon an application for a subdivision, variance, special use permit and such other similar applications required or authorized pursuant to this chapter;
(ii) The approval of an ordinance first establishing a zoning district upon annexation or the approval or denial of an application to change the zoning district applicable to specific parcels or sites pursuant to section 67–6511, Idaho Code; or
(iii) An approval or denial of an application for conditional rezoning pursuant to section 67–6511A, Idaho Code.

I.C. § 67-6521(1)(a). The amendments were effective March 31, 2010. Ch. 175, § 5, 2010 Idaho Sess. Laws 359, 362.

9

by the decision on the application. Ch. 123, § 1, 2003 Idaho Sess. Laws 373, 374. Former Idaho Code § 67-6521(1)(d) granted the right of judicial review to "one having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development." Ch. 199, § 1, 1996 Idaho Sess. Laws 620, 620-21.

The agency action in this case does not involve the denial or granting of a permit. In the order appealed from, the Board of Commissioners determined that the Staffords had violated the site disturbance ordinance by landscaping their property without first obtaining a permit. The Staffords have not appealed the denial of a permit or the conditions attached to a permit. Although the denial of the certificate of occupancy was involved in this case, that certificate neither is a permit under LLUPA nor was it addressed in the agency order appealed from. Therefore, the Staffords did not have the right to seek judicial review of that agency action under either former Idaho Code § 67-6519(4) or former Idaho Code § 67-6521(1)(d). The legislature has not granted the right of judicial review of administrative enforcement proceedings under local planning and zoning ordinances. Therefore, the district court did not have jurisdiction to rule on the merits of the petition for judicial review, and this Court does not have jurisdiction on the appeal.

## IV. CONCLUSION

We vacate the decision of the district court. We remand this case to the district court with instructions to dismiss the petition for judicial review without prejudice. Because neither party raised the issue of jurisdiction, we do not award costs on appeal.

Justices BURDICK, W. JONES, and HORTON **CONCUR**.

J. JONES, J., specially concurring.

While I would hold that the Staffords are entitled to judicial review under former Idaho Code § 67-6519(4), I otherwise concur in the Court's analysis of the issues presented in this case. Of particular concern is the fact that the County has refused to issue the certificate of occupancy for the Staffords' addition, despite the fact that the Staffords have fully complied with the terms of the building permit, as acknowledged by the County's counsel at oral argument. The Staffords

10

are entitled to the certificate of occupancy and there appears to be no valid reason for the County to withhold it.

With regard to the jurisdiction issue, it appears to me that the Staffords are applicants "aggrieved by a decision" of a governing body within the meaning of Idaho Code § 67-6519(4), entitling them to judicial review. The decision that aggrieved them relates directly to the building permit. Without the certificate of occupancy, the building permit is of little use to them. Having complied with the terms of the permit, they are unequivocally entitled to the certificate of occupancy. That being said, there is no need to belabor the jurisdictional point because it appears that the County will be hard pressed to deny the Staffords the relief to which they are entitled.